McCARTY ET AL. *v.* STATE, EX REL. BOONE ET AL.

[No. 20,255. Filed February 24, 1904.]

INTOXICATING LIQUORS.—*Death Resulting from Illegal Sales.*—*Evidence.*—B. was brought into defendant's saloon in such a condition of intoxication that he fell to the floor. He drank intoxicating liquor in defendant's saloon a number of times that afternoon and evening. The latter part of the evening he spent in sleep in a back room of the saloon. When the time came to close, he went out, and the other persons who had been in the saloon left him sitting on the porch thereof, in a temperature below freezing. Twelve days later his body was found in the vault of an outhouse immediately back of the saloon into which he might have fallen. Water in the vault covered his body. A post-mortem examination showed no external marks of violence. The physicians who conducted the post-mortem testified that his stomach was somewhat inflamed, but contained no alcohol, that in their opinion he was not drowned, and that he had not died from exposure. *Held,* that the jury was authorized to infer that B. came to his death as a result of intoxication produced by unlawful sales of liquor by defendant.

From Grant Superior Court; *R. T. St. John*, Special Judge.

Action by the State, on the relation of Rosella Boone and others, against James M. McCarty and others. From a judgment for plaintiff, defendants appealed. Transferred from Appellate Court, under §1337u Burns 1901. *Affirmed.*

*G. A. Henry* and *P. H. Elliott*, for appellants.
*Elias Bundy*, for appellees.

GILLETT, C. J.—Action on a saloon keeper's bond to recover under the statute for loss of support by the death of one John R. Boone, caused by the unlawful sale of intoxicating liquor to him. The suit was brought on the relation of the widow and children of said decedent. The issue was formed by a general denial addressed to the complaint. A trial resulted in a verdict and judgment in favor of appellee. Appellants unsuccessfully moved for a new trial, and the refusal to grant such motion has been made the basis of this appeal.

It is urged that there was no evidence showing an unlawful sale of intoxicating liquor to said John R. Boone, and that the jury was not justified in inferring that his death was caused thereby. There was evidence to the following effect: Boone, who was a periodical drinker, left his home on the morning of November 27, 1900, and did not return thereto. About three o'clock of the afternoon of the next day he was found lying in the yard back of the saloon of appellant McCarty. He was brought into said saloon in such a condition of intoxication that he fell to the floor. He drank intoxicating liquor in said saloon a number of times that afternoon and evening. The latter part of said evening he spent in sleep in the back room of said saloon. When the time came to close, he went out, and the other persons who had been in said saloon left him sitting on the porch thereof. He was not thereafter seen in life, so far as

the evidence shows. The temperature that night was below freezing. Twelve days later the body of said Boone was found in the vault of an outhouse immediately back of said saloon. There was water in said vault which entirely covered the body. The seat of said outhouse was so constructed that it might be possible to fall into the vault, as there was an open space sixteen inches wide between the rear wall and said seat, extending the whole length of said outhouse, or about four and one-half feet. A post-mortem was held. There was no external mark of violence upon the body. The physicians who conducted the post-mortem testified that an examination of the vital organs disclosed no cause of death. The brain and its membranes were apparently normal. There was no water or foreign substance in the lungs or in the trachea. The stomach bore some evidence of inflammation; it contained a small amount of mucus. It had no liquor in it, and there was no odor of alcohol present. The body was but little decomposed, and the only change in the external appearance thereof was due, according to the testimony, to the soaking of the skin. The physicians further testified that, in their opinion, the deceased was not drowned, that they perceived no evidence that he died from exposure, and that they could not state the cause of death.

It is not denied by counsel for appellants that the testimony of one of the witnesses (Graham) tends to show unlawful sales of intoxicating liquors to Boone by the servants of appellant McCarty during the afternoon and evening preceding Boone's disappearance. The mere fact that Graham was contradicted by a number of other witnesses, and that the physicians testified that there was no liquor in the stomach and no odor of alcohol present at the time of the post-mortem, does not present an issue of law for our determination. Our function in the consideration of cases of this character is limited to the decision of law questions, and the question as to the sufficiency of evidence to support a verdict can not become one of law unless there is an en-

McCarty v. State, ex rel.

tire absence of evidence on some material point. *Carver* v. *Forry,* 158 Ind. 76, and cases there cited.

In our opinion the jury was authorized to infer that Boone came to his death as a result of intoxication produced by such unlawful sales. The physicians may have been unable to venture a definite opinion as to the cause of death, but the jury was authorized to draw such inference. In reasoning from cause to effect, that body followed the evidence, instead of indulging in a vague and speculative doubt as to whether some third person might have caused Boone's death. One of two theories must be adopted: that he fell into the vault, or that, living or dead, his body was put in there by some one else. It was not material to the cause of action whether Boone died in the outhouse or not, for the question was as to whether his death was caused by the unlawful sale of intoxicants as charged. The theory of relators is based on known facts, and is reasonably adequate, while the suggested theory is not only wholly without evidence to support it, as before stated, but involves the improbability that any one would kill a practically helpless man, and the serious difficulty of determining how his life could be thus taken without an evidence of the fact which the physicians could detect.

The evidence shows that in some way the body of Boone, dead or alive, fell into the vault. There was therefore this known fact upon which the antecedent evidence had a strong bearing, and it was perfectly competent for the jury to infer from the whole evidence that his death was caused as charged. Certain facts being established, other facts may be and often are ascertained by inference. While rein must be sometimes put on the imagination of juries, the process of reasoning in respect to inference is largely a matter of free logic. In *Rex* v. *Burdette,* 4 Barn. & Ald. 95, 161, Abbott, C. J., said: "A presumption of any fact is, properly, an inferring of that fact from other facts that are known; it is an act of reasoning; and much of human

knowledge on all subjects is derived from this source. A fact must not be inferred without premises that will warrant the inference; but if no fact could thus be ascertained, by inference in a court of law, very few offenders could be brought to punishment."

We perceive nothing in the fact that the evidence shows that Boone was not drowned which renders the conclusion reached by the-jury inadmissible. If he did not, with his expiring breath, fall into the vault, it may be inferred that, having fallen in there, the water was not deep enough to submerge his head while standing upright. In that unspeakable place, death would soon relieve his sufferings, whether he were drowned or not. The statute was intended to afford a remedy for an injury to the means of support, whether directly or remotely caused by the intoxication. *Homire* v. *Halfman,* 156 Ind. 470. The trial court did not err in overruling the motion for a new trial.

Judgment affirmed.