## DICE v. SHERBERNEAU.

1. INTOXICATING LIQUORS — CIVIL-DAMAGE LAW — SUICIDE OF IN-
TOXICATED PERSON — CAUSE OF SUICIDE — NECESSITY OF PROOF.
   In an action by a widow under the civil-damage law (section
   5398, 2 Comp. Laws), for damages arising from the suicide of
   her husband while intoxicated, it is not essential to plaintiff's
   right of action that she shall show that the intoxication was
   the cause of her husband's suicide.

2. SAME—DEFENSES—UNAUTHORIZED ACTS OF AGENT.
   That defendant had instructed his regular bartender not to sell
   to plaintiff's husband, and the liquor was furnished by a
   man employed only to fill the ice box and clean up the
   saloon, at a time when neither defendant nor his bartender
   were present, is no defense, since it cannot be presumed de-
   fendant would leave his place of business unattended.

3. SAVING QUESTIONS FOR REVIEW—EXCESSIVENESS OF VERDICT—
NECESSITY OF MOTION FOR NEW TRIAL.
   The question of excessiveness of verdict cannot be considered
   where there has been no motion for a new trial raising the
   point.

Error to Osceola; Rose, J. Submitted April 13, 1908.
(Docket No. 52.) Decided May 1, 1908.

Case by Lavina Dice against Thomas B. Sherberneau,
principal, and Egbert F. Chapin and Mike Walsh, sure-
ties, under the civil-damage act. There was judgment
for plaintiff, and defendants bring error. Affirmed.

*Carroll & Nichols* (*Charles A. Withey*, of counsel),
for appellants.

*B. N. Savidge*, for appellee.

Defendant Sherberneau was a saloon keeper. Defendants
Chapin and Walsh were his sureties. Plaintiff's husband
was an habitual drunkard, or so in the habit of intoxica-

tion that plaintiff had notified Sherberneau and other saloon keepers not to furnish him any liquor.

On November 1, 1905, Mr. Dice twice obtained whiskey in defendant's saloon. The first time he obtained a drink from one Houk who was in attendance upon the bar. The second time he obtained a bottle or flask from one Curtis, the only person in the saloon when Dice and his companion entered. Curtis went behind the bar, filled the bottle, took Mr. Dice's money and placed it on the back bar. Dice returned home that evening in a state of intoxication, took down his gun, placed the muzzle against his stomach, pulled the trigger with his toe, shot himself, and died a few hours after.

Plaintiff instituted this suit against the defendant under that provision of section 5398, 2 Comp. Laws, reading as follows:

"Every wife, child, parent, guardian, husband or other person, who shall be injured in person or property, or means of support or otherwise, by any intoxicated person, or by reason of the intoxication of any person, or by reason of the selling, giving or furnishing any spirituous, intoxicating, fermented, or malt liquors, to any person, shall have a right of action in his or her own name, against any person or persons who shall, by selling or giving any intoxicating or malt liquor, have caused or contributed to the intoxication of such person or persons, or who have caused or contributed to such injury, and the principal and sureties to the bond hereinbefore mentioned, shall be liable severally and jointly with the person or persons so selling, giving or furnishing any spirituous, intoxicating, or malt liquors, as aforesaid, and in an action provided for in this section, the plaintiff shall have a right to recover actual and exemplary damages."

The declaration alleges:

"By reason of the said several unlawful sales of intoxicating liquors to the said George Dice, he, the said George Dice, drank of the liquor so sold, furnished, delivered or given him as aforesaid, and by reason thereof became and was intoxicated on the day and evening of the said 1st day of November, A. D. 1905, at the said village of Marion, county and State aforesaid, and while so intox-

icated he, the said George Dice, on the evening of the said 1st day of November, A. D. 1905, at the said village of Marion, did shoot himself and from the wound so inflicted did die, and that he, the said George Dice, while intoxicated as aforesaid, on the day and at the place last aforesaid, did commit suicide."

She obtained a verdict and judgment.

So far as essential the further statement of facts will be made in connection with the points raised.

GRANT, C. J. ( *after stating the facts* ). Five errors are alleged:

(1) The court misinterpreted the statute above quoted.

(2) In submitting to the jury the question whether the defendant Sherberneau is liable for the sale of the liquor by Curtis to Dice.

(3) The verdict is excessive.

(4) It is against the weight of the evidence.

(5) The court erred in refusing to grant a new trial.

1. The court instructed the jury that if Dice shot and killed himself while in an intoxicated condition, and that defendant Sherberneau was responsible for selling intoxicating liquor to him, which contributed to his intoxication, the defendant was liable.

Counsel for the defendants contend that it was incumbent upon the plaintiff to prove that the intoxication was the cause of her husband's suicide, and that the mere fact of committing the deed while in a state of intoxication is not sufficient to sustain a verdict. Counsel seek to make a distinction between an act committed by an intoxicated person towards others in consequence of which injury results to his family or the death from exposure or drowning, or being killed in a drunken brawl while intoxicated, and the act of suicide while the person is intoxicated. No case involving suicide by an intoxicated person has before been presented to this court. In an early case under this statute, this court said:

"The statute provides as plain as the English language can state it, that this action shall lie for any injury occas-

ioned by an intoxicated person. It is not for the injured party to produce proof, or for the jury to speculate, upon the probabilities whether the intoxication was the natural cause of the act which caused the death. The act itself by a person intoxicated fixes the liability for the damage upon the person selling or furnishing the liquor which caused the intoxication." *Brockway* v. *Patterson*, 72 Mich. 122, 128 (1 L. R. A. 708).

In that case plaintiff's husband and his companion left the saloon late at night in a state of intoxication. On their way home a quarrel ensued in which his companion struck Brockway and inflicted a wound in consequence of which he died.

What difference in principle is there between a case where the intoxicated person assaults and injures his wife and that in which he with suicidal intent inflicts an injury upon himself? Or, while in a state of intoxication, he is accidentally drowned, or commits suicide by drowning? The injury to the plaintiff on account of her husband's death, or injury so that he cannot work is the same in each case. The presumption is as great that he would not kill his wife as it is that he would not kill himself. Both acts are equally inconsistent with the conduct of a sober man. It is well in such case that the disordered mind of the drunkard be directed to his own destruction rather than to the destruction of his family.

The difficulty in proving that the deceased would not have committed suicide without the intoxication is apparent. It would substantially result in denying to a wife or children the benefit of this statute in cases of suicide. Even where a wife sought damages because her husband had committed the crime of burglary, while in a state of intoxication, the court instructed the jury that the defendant was liable if the husband formed the intent to commit the burglary by reason of the intoxication, or was so intoxicated that he was incapable of forming the intent. *Dennison* v. *Van Wormer*, 107 Mich. 461. In that case stress was laid upon the felonious intent essential to establish the crime. In such cases it is incumbent upon

the wife or child to show facts and circumstances from which a jury may legitimately infer that the crime was the result of the intoxication, and not of a previously formed intent. Intoxication seldom leads to burglary and other crimes where the act implies a previously formed and intelligent criminal intent. In such cases mere proof of intoxication is not sufficient to sustain a right of action by the wife or child for damages resulting from loss of support. It is, however, a matter of common knowledge that persons long addicted to the excessive use of intoxicants—that was the case here—do, when under the influence of liquor, attack their families and often attempt their own destruction. In such cases the fact that the act was committed while in a state of intoxication is all that the statute requires.

Where an intoxicated man killed his wife and then committed suicide and his child brought suit against the saloon keeper for damages, the court, after citing several authorities, said:

"In those cases, as well as in others arising under the act, liability was established from the sale of liquors producing intoxication, and the act of the intoxicated person causing injury to the plaintiff in his person, property or means of support. Those elements exist here. The cause of action is neither taken away nor mitigated because the cause of injury also constitutes a crime. The jury were not to inquire whether either ' the homicide or suicide were the natural, reasonable, or probable consequences of the defendant's act.' It is enough if while intoxicated in whole or in part by liquors sold by the defendants, those acts were committed, if by reason of them, or either of them, the plaintiff's means of support were affected to his injury." *Neu* v. *McKechnie,* 95 N. Y. 632.

The statute in that case is the same as the statute of Michigan.

So, where the husband had formerly attempted suicide, but finally did commit it, leaving a paper saying: "Give my watch to my boy," and that his brother-in-law owed

him $57, a verdict for the plaintiff based solely upon proof of intoxication and suicide was sustained. *Blatz* v. *Rohrbach*, 42 Hun (N. Y.), 402. The court there said that the question is not ordinarily susceptible of any direct proof.

We think the construction placed upon this statute by the circuit judge is correct.

2. The defendant Sherberneau gave evidence tending to show that he had instructed his regular bartender not to sell liquor to. Dice. Curtis, who sold Dice the liquor, was employed by Sherberneau in his saloon to fill the ice box, clean spittoons, etc. Sherberneau testified that he compensated him only by giving him drinks. Whether he compensated him at all or not is immaterial. The statute makes the saloon keeper liable for the acts of his employés. Curtis was not produced as a witness. There is testimony that Curtis was generally in the saloon in the morning cleaning up, and that on one occasion, shortly before the sale to Dice, Curtis was tending bar. Neither Sherberneau nor his bartender were in the saloon at the time. The jury are justified in inferring that a saloon keeper would not leave his place of business unattended. The saloon was open for business, and we agree with the circuit judge in saying:

"It does not stand to reason that the bartender intended to leave the saloon open to the public with no one in charge of it."

If a stranger had stepped into the saloon and found only Curtis there, apparently in charge of the saloon, and Curtis had waited upon him, clearly the defendant would have been liable. There was evidence to sustain the verdict upon this point.

3. The question of an excessive verdict cannot now be considered, there having been no motion for a new trial made in the court below raising this point. *Brockmiller* v. *Industrial Works*, 148 Mich. 642, and authorities there cited.

The 4th and 5th points may be considered together.

The questions of law raised upon the motion are above decided. We cannot say that the verdict is so clearly against the weight of the evidence as to justify us in granting a new trial.

The evidence as to the degree of intoxication was in sharp conflict. The judge in his opinion on the motion for a new trial, after carefully reviewing the evidence, said:

" It became a question of fact for the jury, and I think they were properly justified, from all the testimony, in reaching the conclusion that he was intoxicated at the time he shot himself."

We concur in this view.

The judgment is affirmed.

MONTGOMERY, CARPENTER, and McALVAY, JJ., concurred. BLAIR, J., concurred in the result.