### TIDD v. SKINNER et al.

(Supreme Court, Appellate Division, Third Department. January 5, 1916.)

1. PARENT AND CHILD ⊜⇒7—NEGLIGENCE—SALE OF POISONS—DAMAGES—EVIDENCE.

Evidence that plaintiff's minor son was employed at a wage of $50 per month, and earned as much as $15 per week singing, and aided his mother greatly, but that defendant druggist sold him heroin for a long time, causing him to become a vagabond, idler, drug fiend, and criminal, shows such damages to plaintiff as that she could recover from defendant for the sales of the drug.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 72, 86–99; Dec. Dig. ⊜⇒7.]

2. PARENT AND CHILD ⊜⇒7—ACTIONS FOR ILLEGAL SALES OF DRUGS—BASIS

That plaintiff's action against a druggist for illegal sales of heroin to her minor son was novel was no defense, where the action was based on the principle of loss of services, and therefore required no precedent.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 72, 86–99; Dec. Dig. ⊜⇒7.]

3. PARENT AND CHILD ⊜⇒7—ACTION FOR DAMAGES—PUNITIVE DAMAGES—EVIDENCE.

Evidence that plaintiff's minor son was employed at a wage of $50 per month, and earned as much as $15 per week singing, and aided his mother greatly, but that defendant druggist sold him heroin for a long time, causing him to become a vagabond, idler, drug fiend, and criminal, and that defendants knowingly sold the drug after observing and knowing its baneful effects, was sufficient upon which to base a judgment for punitive damages.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 72, 86–99; Dec. Dig. ⊜⇒7.]

Appeal from Trial Term, Schenectady County.

Action by Margaret Tidd against C. B. Skinner and another, doing business as C. B. Skinner & Co. From a judgment for plaintiff, and order denying new trial, defendants appeal. Affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Christopher J. Heffernan, of Amsterdam, for appellants.

James J. Barry, of Schenectady (Frank Cooper, of Schenectady, of counsel), for respondent.

HOWARD, J. A mother brings this action against a firm of druggists for having sold to her minor son a certain poisonous drug known as heroin. She alleges that as a result of these sales her son became an habitual user of heroin and thereby became a physical and moral wreck, unable to perform any labor and that his health was ruined and

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 54 Hun, 639.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

his mind destroyed, whereby she was deprived of his services and has been greatly damaged. The plaintiff's husband, the father of the minor, was dead at the time of the acts complained of. The facts were submitted to a jury, and a verdict has been returned in favor of the plaintiff for $2,000 compensatory damages and $1,000 punitive damages.

Our examination of the record convinces us that the numerous sales of this drug to the plaintiff's son, continuing over a long period of time, has been established by overwhelming evidence. We say overwhelming, notwithstanding the fact that the three principal witnesses for the plaintiff were each drug fiends and were each criminals. Being thus fixed in our opinion that the jury was well warranted in finding that the sales had been made, at the times and in the quantities complained of, we have no disposition whatever to disturb the verdict as being against the weight of evidence.

[1] And we believe that the evidence shows that the plaintiff was, in fact, actually damaged. The proof shows that previous to his acquisition of the drug habit the young man earned considerable money. He was something over 18 years of age. The evidence as to his earning capacity was explicit, and much of it came from the mouth of a disinterested witness. The lad was employed at Schenectady by the General Electric Company, and an official in charge of the books was produced, and the exact amount of his earnings was shown. It appears from these books that his wages ranged from $40 to $50 a month. He also earned money as a singer, sometimes $15 per week. He was also useful to his mother about the house, doing chores and doing errands and making himself useful in other ways, as dutiful boys of that age usually do. The compensatory damages fixed by the jury cannot, therefore, be said to be an exaggerated estimate.

[2] The action is said to be a novel one. In some respects this is true, although the principle on which the cause of action is based is not novel, but has been known and recognized by the courts for centuries. By whatever name this action may go, the fact is that the property rights of the plaintiff have been trespassed upon and she is simply suing for reimbursement. The services of her son, to which she was legally entitled, have been destroyed, so she alleged, and so the jury has found, and she is only asking pay for this damage done. The plaintiff bases her claim upon the same principle which underlies the cause of action accruing to a father in case of the abduction of his daughter, or to a husband in case of the alienation of his wife's affections. Precedent is not necessary in order that the plaintiff may recover here. If the rights of the plaintiff have been invaded, there must be redress. But there is a precedent, an adjudicated case closely resembling this, in Hoard v. Peck, 56 Barb. 202. It is this case that we are following in our determination here. But it is said that Hoard v. Peck is not just like this case. No two cases are just alike. Facts usually differ; principles are eternal.

[3] At the time of the various sales complained of, section 236 of the Public Health Law (Consol. Laws, c. 45), as it stood at the time of the transactions in question, forbade a druggist to sell morphine or

opium or their preparations without affixing to each package sold a label containing the name of the article and the word "Poison" distinctly written or printed thereupon in red ink. This requirement of the law the defendants wholly failed to observe. Ignoring this statute completely, they sold day after day, week after week, and month after month, large quantities of this poisonous and ruinous drug to this misguided youth. On one occasion 1,000 pills were sold to him in a week —enough poison to kill many normal people. But notwithstanding this condition of affairs, amply proven at the trial, the defendants complain of the punitive damages which have been assessed against them. Unless there is either evil intent on the part of the defendant, or a reckless disregard of the rights of others, there can be no punitive damages. The evidence in this case does not go to the extent of establishing an evil purpose to destroy the health and activities of this young man; but the proof does abundantly establish, in our judgment, that the defendants were wholly reckless of the rights of others. It establishes that the defendants, impelled by the instinct for gain and profit, absolutely disregarding the health and future of this young man, and wholly unmindful of the consequences to his parents, sold him this drug and continued to sell it to him long after they discovered its deleterious effects upon his system.

To say that they did this innocently affronts the reason. These defendants were pharmacists, skilled in the science of mixing drugs; they knew their purposes, uses, and effects. They knew the subtle, sinister, destructive effect on the human system of this offspring of opium. They knew of its malicious and unconquerable mastery over the human mind—knew of its inexorable demands upon its victims. But it was not necessary to be a pharmacist to know this; every layman knows it. However, in the face of this general knowledge of the baneful effects of heroin, and in the face of their constant daily observation of the actual deadly effects upon the victim whom they were supplying with it, these defendants, actuated only by greed, continued for many months to sell it to this young man and his deluded companions. During the time which these defendants were supplying this drug to the young man he became a vagabond, an idler, a drug fiend, and a criminal, undutiful to his mother, worthless to himself, dangerous to the community. The jury was right in concluding that all this was the result of the illicit traffic carried on by these defendants, and that they should be punished for their reckless disregard of the rights and welfare of this boy and his mother.

Our attention has been called to several alleged errors and irregularities during the trial, but upon careful examination of them all we do not find anything in the record which calls for a reversal of the judgment. The charge of the learned trial court is particularly criticized by the appellants. Although the charge is strong and forceful, and in some places somewhat more eloquent than necessary, we do not consider it intemperate, and do not think that it was calculated to, or did in any degree, bias the jury against the defendants.

The judgment and order appealed from should be affirmed, with costs. All concur.