# ELIZABETH PETE v. JACOB LAMPI, THE AETNA CASUALTY & SURETY COMPANY AND SOUTHERN SURETY COMPANY.[1]

### December 9, 1921.

### Nos. 22,400, 22,403, 22,410.

**Death caused by illegal sale of intoxicating liquor.**

1. Action to recover for the loss to plaintiff in her means of support caused by intoxicating liquor illegally sold to her deceased husband by defendant Lampi. The evidence sustains the finding that Lampi had sold intoxicating liquor to him in violation of law, and that his death resulted from acute alcoholism.

**Opinion of medical expert.**

2. Where the testimony of a medical expert, taken by deposition, disclosed that his opinion as to the cause of death was based in part on facts ascertained from third parties out of court, but such facts have been established at the trial by other evidence before the deposition was read, his opinion was properly received in evidence.

**Inaccurate hypothetical question — refusal to strike question and answer.**

3. Where an expert gives his opinion in answer to a hypothetical

[1]Reported in 185 N. W. 653.

question which contained minor inaccuracies, but his subsequent testimony showed that such inaccuracies had no part in the formation of his opinion, the court properly refused to strike the question and answer.

**Authenticated copy of death record.**

4. The claim that the copy of the record of death is not authenticated by the proper officer, is not borne out by the record as it is certified by the state registrar.

**Bank book admissible in evidence.**

5. The bank book of the deceased was properly received in evidence as having some bearing on his financial condition.

**New trial — inclusion of damages for period before death.**

6. The evidence will not warrant a finding that plaintiff sustained a loss in her means of support prior to the death of her husband, and, for the error in permitting the jury to award damages for a period of some two and one-half years prior to that date, there must be a new trial.

**Recovery against surety for illegal sales.**

7. If it be shown that illegal sales to the deceased, made during the period covered by a surety bond, substantially contributed to cause the ailment which produced death, a recovery may be had against the surety.

**Charge erroneous.**

8. It was error to instruct that the certificate of death was conclusive proof of the facts therein stated, unless rebutted by competent evidence.

Action in the district court for St. Louis county against Jacob Lampi and the sureties on his bond to recover $75,000 for the death of plaintiff's husband. The case was tried before Fesler, J., who when plaintiff rested denied defendants' separate motions for dismissal of the action and at the close of the testimony denied their separate motions for directed verdicts, and a jury which returned a verdict in favor of plaintiff and against defendant Lampi for $9,746; against Southern Surety Company for $2,500 and against defendant Aetna Casualty & Surety Company for $2,000. From orders denying their separate motions for judgment notwithstanding the verdicts or for new trial, defendants took separate appeals. Orders denying motions for judgment notwithstanding verdict affirmed; orders denying motions for new trial reversed.

*Victor H. Gran, John J. Fee, George H. Spear* and *Russell P. Fischer,*
for appellants.

*John Jenswold* and *John D. Jenswold,* for respondent.

TAYLOR, C.

The defendant Lampi kept a saloon in the city of Ely in St. Louis
county for many years. The defendant Southern Surety Company was
the surety on his bond in the sum of $2,000 for a period of one year be-
ginning June 5, 1915, and was also the surety on his bond in the same
sum for a further period of one year beginning June 5, 1916. The
defendant Aetna Casualty & Surety Company was the surety on his bond
in the same sum for a period of one year beginning June 5, 1917. The
three bonds, each for the period of one year, covered the three years be-
tween June 5, 1915, and June 5, 1918. The plaintiff was the wife of
Herman Pete who died December 29, 1917. In September, 1919, plain-
tiff brought this action, under section 3200 of the General Statutes of
1913, against Lampi and his bondsmen, alleging that Lampi had il-
legally sold intoxicating liquor to her husband during the period cov-
ered by these bonds, in consequence of which he died on December 29,
1917, from acute alcoholism, and that she had been injured in her
means of support by the intoxication caused by the liquor so illegally
sold. The trial resulted in a verdict against Lampi in the sum of
$9,746; against the Southern Surety Company in the sum of $2,500;
and against the Aetna Casualty & Surety Company in the sum of $2,000.
Each of the defendants made a motion for judgment notwithstanding
the verdict or for a new trial, and appealed from the order denying the
motion.

Herman Pete had been a hard periodic drinker for many years. In
1914 he went to the hospital for inebriates at Wilmar and thereafter re-
frained from drinking for some months. He then began drinking
again, and as time passed his "sprees" became more frequent and more
protracted. On the afternoon of his death, he sat in an arm chair in
Lampi's saloon for a long time in a drunken sleep or stupor. Late in
the afternoon he fell from the chair to the floor, was moved into a small

adjoining room and was subsequently found to be dead. The deputy coroner, Dr. Ayres, was called. He took charge of the body and on the following day caused an autopsy to be made.

Dr. Ayres was not present at the trial, but his deposition, previously taken, was read to the jury and is the only expert testimony in the case. The doctor testified that the autopsy disclosed nothing abnormal in any of the vital organs of the deceased, and nothing from which the cause of death could be determined. In answer to a hypothetical question requiring him to assume facts, some of which in minor particulars were not quite in accord with the facts proven at the trial, he stated that in his judgment the deceased died from acute alcoholism. On cross-examination he stated that his opinion, that death was caused by acute alcoholism, was not based on anything disclosed by the autopsy, but on the fact that the deceased had been a heavy habitual drinker for many years and had indulged in excessive and protracted drinking on the day of his death, and on the further fact that he was unable to find any other reasonable explanation of the cause of death. It further appeared from the cross-examination that the doctor had known Mr. Pete for some 20 years and had personal knowledge of his drinking habits, but had no personal knowledge of what happened on the day that he died, and that the doctor's information concerning what happened on this day was obtained from others in the examination which he made as coroner. On the redirect examination the doctor testified, in part, as follows:

"Q. And your examination of the body in the saloon and the autopsy were made for the purpose of ascribing a cause to his death? A. Yes sir. Q. And, as I understand you, basing your opinion upon the results of these two, and your personal knowledge of his drinking habits, and the assumption that he had been drinking considerable on the day of death, you reached a conclusion as to this? A. Yes sir. Q. And that was? A. Death was due to acute alcoholism."

Defendants earnestly contend that both the hypothetical question and the doctor's opinion as to the cause of death should have been excluded. They insist that his opinion was based on hearsay information obtained from unknown third parties outside of court, and was inadmissible for

that reason under the rule stated and applied in Miller v. St. Paul City Ry. Co. 62 Minn. 216, 64 N. W. 554; Webb v. Minneapolis St. Ry. Co. 107 Minn. 282, 119 N. W. 955; and Thompson v. Bankers M. C. Ins. Co. 128 Minn. 474, 151 N. W. 180, Ann. Cas. 1916A, 277. As said in these cases:

"Medical expert cannot be allowed to give his opinion on information which he has obtained out of court from third parties other than the patient."

But the doctor's testimony shows that the facts on which he based his opinion were all within his personal knowledge, except the fact that Herman Pete had indulged in excessive and protracted drinking on the day of his death. This fact had been established by other evidence before the deposition was read, and we think the ruling admitting his opinion in evidence was correct within the principle applied in Thompson v. Banker's M. C. Ins. Co. supra. The doctor's subsequent testimony shows that the inaccurate statements in the hypothetical question had no part in the formation of his opinion, and hence could not have been prejudicial to the defendants. See Donnelly v. St. Paul City Ry. Co. 70 Minn. 278, 73 N. W. 157; Moehlenbrock v. Parke, Davis & Co. 141 Minn. 154, 169 N. W. 541.

Defendant's contention that the copy of the record of death, received in evidence, was not certified to by an officer authorized to make such certificates, is not borne out by the record, for the document shows that the certificate was made by the state registrar. Furthermore the original record was made by Dr. Ayres in his capacity as deputy coroner, and all the matters stated therein were fully covered by the testimony of the doctor in his deposition.

Defendants complain because the court admitted in evidence the bank book of Mr. Pete covering the period from February, 1914, to the time of his death. The evidence shows that he was engaged in logging and that the principal part of his business consisted in furnishing timber to the mines. There was some evidence, although not very definite, as to the extent and profits of his operations. The bank book showed that he made deposits and drew checks against them, and that at all times

during this period, except once, in 1916, when his account seems to have been overdrawn, he had money in the bank subject to check. We fail to see wherein this fact was prejudicial to defendants. The book was properly received as having some bearing on his financial condition.

It is contended that plaintiff failed to prove any unlawful sales of liquor, and the Southern Surety Company insists that, even if unlawful sales were made, none were shown within the period covered by the bonds executed by that company.

It is true that the evidence as to specific sales of liquor to Herman Pete is very meagre. But the evidence shows that he was an habitual drunkard; that Lampi's saloon was the place to which he nearly always resorted when drinking; that he had been taken out of this saloon drunk innumerable times; and that these occurrences extended over the entire time here in question, although his "sprees" were more frequent during the latter part of the time. It also appears that the saloonkeepers of the city had been forbidden to sell liquor to him, but the time or times when these notices were given was left uncertain. One of the conditions in each of the bonds was that no sale of intoxicating liquor should be made to "any intemperate person or habitual drunkard." · We think the evidence fully warranted the jury in finding that Lampi had violated this condition of the bonds.

The action is based on the claim that plaintiff had been injured in her means of support by the unlawful sale of intoxicating liquor to her husband. Defendants contend that there is no evidence that plaintiff sustained any loss in her means of support prior to the date of her husband's death, and that the court erred in refusing to give an instruction to that effect requested by them, and in giving instructions to the contrary requested by plaintiff. This raises the principal question in the case.

The court instructed the jury to the effect that if Lampi, by illegal sales of liquor to Herman Pete, injured plaintiff in her means of support, he would be liable to her for the loss sustained; that the Southern Surety Company would be liable to her for that part of the loss which they traced to the period covered by the two bonds given by that com-

pany, and that the Aetna Casualty and Surety Company would be liable for that part of the loss which they traced to the period covered by the bond given by the Aetna Company. The following instruction requested by plaintiff was given:

"If you find from the evidence that during the period from June 5, 1915, to June 5, 1916, the defendant Lampi did, by illegally selling intoxicating liquor to Herman Pete, cause the intoxication of the said Pete, and that by reason thereof, the plaintiff was injured in her means of support, or that said intoxication, if any, contributed to cause the death of the said Pete, or both, then you will find a verdict in favor of plaintiff and against the defendant Southern Surety Company for such amount of damages as plaintiff may be entitled to by reason thereof."

Similar instructions, requested by plaintiff, were also given in respect to the periods covered by the other two bonds. The court gave the jury two forms of verdict, one for the plaintiff and one for the defendants. The form for the plaintiff contained a blank space in which to insert the amount awarded against defendant Lampi, a second blank space in which to insert the amount awarded against defendant Southern Surety Company, and a third blank space in which to insert the amount awarded against defendant Aetna Casualty & Surety Company. The court instructed the jury that, if they found a verdict for plaintiff, they should first determine the total amount of damages she had sustained and insert that as the amount against Lampi; that they should then determine the amount of damages she had sustained during the period from June, 1915, to June, 1917, and insert that as the amount against the Southern Surety Company, and should then determine the amount of damages due to illegal sales made after June 4, 1917, and insert that as the amount against the Aetna Company. The jury seem to have been in doubt as to whether they could award, against a surety, any damages except those sustained during the period covered by its bond, and returned into court and requested further instructions. They were informed in substance that, if, by reason of illegal sales made during the period covered by a bond, plaintiff had been injured in her means of support after the period covered by the bond had expired, that was a

proper element for them to take into consideration in fixing the damages.

In her testimony, plaintiff, herself, negatived all suggestions that the support furnished her in her husband's lifetime had been lessened in any manner by reason of his drinking. Asked whether Herman ever gave her any money to spend for her own purposes, she answered: "Yes, I always had money if I wanted to have it." Asked what she did when Herman stopped giving her money, she answered: "He didn't stop giving me money." Asked whether she had as many and as good clothes and as much food and of the same kinds after Herman went to the asylum at Wilmar as before, she answered: "Yes." She also answered that the supplies furnished were about the same throughout her entire married life. Asked whether the fact that Herman began to drink heavily made any difference, she answered: "He didn't drink all the time." Asked whether, when he did drink, it made any difference, she answered: "It didn't make any difference, save that life seemed to be much sadder. He took good care of his home."

An attempt was made to show the profits which Herman Pete had made in his business but without much success. He seems to have kept no formal books of account. Such accounts as were kept were kept by his son, Jacob, but Jacob was unable to give any definite information concerning the profits. There is no evidence and no claim that they were any less in the period immediately preceding Mr. Pete's death than in prior years. In fact testimony given on plaintiff's behalf and subsequently stricken out would indicate that his business had been considerably more profitable during this period than previously.

As the financial ability of her husband to support her does not appear to have become impaired in his lifetime, and as the supplies, in money and necessaries, actually furnished her do not appear to have been curtailed in any way on account of his drinking, we feel constrained to hold that the evidence will not justify a finding that plaintiff had suffered any pecuniary loss prior to her husband's death. Her pecuniary loss resulted from the fact that his death took from her thereafter the support which she had previously enjoyed. For this loss she is entitled to recover, but, under the instructions given them, the jury may have

included in their verdict a substantial sum as damages sustained in her husband's lifetime. We have no means of knowing what part of the verdict was for damages in his lifetime, or what part was for damages resulting from his death. For this reason there must be a new trial.

The Southern Surety Company insists that it is entitled to judgment notwithstanding the verdict, for the reason that no loss was sustained during the period covered by its bonds. If it be shown that illegal sales of intoxicating liquor to Herman Pete, made during this period, contributed in a substantial degree to produce the ailment which caused his death, a recovery may be had against this company, and, as a sufficient showing may be made on another trial, we think the application for judgment should not be granted.

While the instruction, requested by plaintiff and given by the court, to the effect that in the absence of competent rebutting evidence the certificate of death was conclusive proof of the facts stated herein, was erroneous, this error is not likely to occur at another trial and requires no further discussion.

Defendants insist that the verdict is excessive, but, as there must be a new trial, it is not necessary to consider this claim.

The several orders denying the motion for judgment notwithstanding the verdict are affirmed; the several orders denying the motions for a new trial are reversed and a new trial is granted.