# STANLEY SWORSKI AND ANOTHER v. S. H. COLEMAN AND ANOTHER.[1]

June 14, 1940.

No. 32,396.

[1]Reported in 293 N. W. 297.

*Levine & Levine,* for appellants.

*A. E. Haering,* for respondents.

PETERSON, JUSTICE.

Plaintiffs sue under the civil damage act, 1 Mason Minn. St. 1927, § 3239[2], to recover damages for injury to their support caused by the death of their minor son Clifford. No question is raised as to the right of both parents to maintain the action. The son was a boy 19 years old. He attended high school and worked at a steady job as a filling station attendant. His earnings were $48 to $50 every two weeks, of which he gave his parents $20 to $25.

Coleman runs a licensed on-sale liquor store or saloon in Waconia. The National Surety Corporation is surety on his bond as such licensee. The bond is in the sum of $3,000 and is conditioned among other things to pay "any damages for death or injury caused by or resulting from the violation of any of the provisions of law relating to the business for which said licensee has been granted a license."

Plaintiffs' cause of action is based on Coleman's unlawfully selling and furnishing intoxicating liquor to Clifford, thereby causing his death. Sale of intoxicating liquor to a minor is unlawful.

On May 19, 1938, Clifford and another boy who attended the same high school he did went on a fishing trip. They stopped at Coleman's liquor store at about 6:00 p. m. They drank some beer for which they paid. The boy companion went outside, but Clifford remained at the bar, where he drank until about 10:30

---

[2]"3239. Every husband, wife, child, parent, guardian, employer, or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, shall have a right of action, in his or her own name, against any person, who shall by illegally selling, bartering, or giving intoxicating liquors, have caused the intoxication of such person, for all damages sustained; * * *"

p. m.  He drank beer, wine, and whiskey.  A witness who was in the place from 8:30 on testified that he saw Clifford drink whiskey and that "he was drinking quite steady."

In the course of the evening Clifford became intoxicated and boisterous.  He followed a young man who went outside and then wanted to fight with him.  He stumbled about and had difficulty keeping on his feet.  He took a wrestling-like hold of the young man in his attempts to fight.  While committing the disturbance he was arrested and taken to Carver county jail, where he was turned over to the sheriff at about 12:30 a. m. of May 20.  The sheriff testified that Clifford had been drinking and was "ornery" and put him in a cell.

About 8:00 in the morning the sheriff found Clifford dead in his cell.  There was no testimony as to the cause of death.  There was evidence to prove the parents' loss of support and funeral expenses.

Defendants at the close of plaintiffs' testimony moved for a directed verdict upon the grounds that there was no proof of any sale or furnishing of liquor to Clifford by Coleman and that there was no proof that Clifford's death was caused by any acts of Coleman.  The motion was granted.  The questions raised by the motion are presented here.

■ The contention that there was no proof that defendant Coleman furnished intoxicating liquor to Clifford rests upon the claims that there was no evidence that Clifford paid for the liquor or that the beverage consumed was intoxicating, and the suggestion that Clifford may have brought his own liquor with him and consumed it at the bar.  The statute does not require a purchase.  A person is liable for giving as well as selling by the terms of the statute.  There was direct evidence that Clifford procured beer, wine, and whiskey at the bar.  A former employe of Coleman testified that she saw Clifford and his companion at the bar drinking liquor.  She was then employed there and certainly knew what was being served.  That Clifford was sober when he entered the saloon and became intoxicated after consuming the beverages served there affords

a demonstration of its intoxicating properties. Intoxication as an effect seems plainly traceable to the liquor consumed as the cause.

There is no basis in the evidence for a finding that Clifford had any liquor with him, much less that he took any into the saloon with him to drink at Coleman's bar. After all, Coleman was a licensed liquor dealer. He operated his place for the purpose of making sales of his own liquor and not as a place where people could come to drink their own. That a saloon-keeper would permit a person entirely unknown to him to bring his liquor into his saloon and drink it at his bar seems highly improbable. The evidence would have sustained a finding that Clifford became intoxicated by liquor furnished to him by the defendant Coleman. McDougall v. Giacomini, 13 Neb. 431, 14 N. W. 150.

■ The causal connection between the use of intoxicating liquor and resulting injury or death is always a fact question. The only question here is whether the evidence would have permitted the jury to find that Clifford's death was caused by drinking intoxicating liquor sold or furnished by Coleman.

The facts are that Clifford was only a high school boy, 19 years of age; that he drank steadily at Coleman's bar for four and one-half hours partaking of beer, wine, and whiskey; that after he had been drinking he became intoxicated, talk-ative, boisterous, and quarrelsome. He got so that he stumbled when he walked and could hardly manage himself. After he got in that condition he went outside and wanted to fight. When he was locked up by the sheriff about two hours later he still bore the evidence of his drinking and was "ornery." He was put into a cell in the jail without anything being done to remedy his condition. He was found dead in his cell about seven and one-half hours later.

There was no medical testimony one way or the other as to the cause of death. If a finding of death due to alcoholism were made it would have to be sustained as a justifiable infer-ence from the facts stated. The very basis for the regulation

of traffic in intoxicating liquors is the well known injurious qualities of intoxicants. The law has taken notice of the injurious effects of the use of intoxicants by minors by prohibiting selling or furnishing the same to them. Because of the damage done to others by the use of liquor, civil damage acts impose a liability on the seller in certain cases. Although our law permits the sale of intoxicating liquor under regulation, it seeks to mitigate its harmful effects by education. Under 3 Mason Minn. St. 1940 Supp. § 3200-29 (Ex. Sess. L. 1933-1934, c. 46, § 9), it is the duty of the liquor control commissioner to assist the state department of education "to prepare a course of instruction relating to the effects of alcohol upon the human system, upon character, and upon society. Such course of instructions shall be used in all public schools of the state."

The pathological effect of using intoxicants is well known. It is common knowledge that large doses may cause death almost simultaneously by a reflex action on the heart or by cardiac and respiratory depression after the drug has been absorbed. 1 Encyc. Britannica (14 ed.) p. 541. So, too, mania may result. Here violence and disease are excluded as causes, since there is no evidence of either. The only apparent cause of death shown by the evidence was acute alcoholism. Death by acute alcoholism was supported as such a strong probability as to permit the inference that such was the fact.

We have no controlling decision on this point. In Fest v. Olson, 138 Minn. 31, 33, 163 N. W. 798, where there was no expert testimony, we held that the question of causal connection was for the jury where the evidence showed that the deceased drowned by his boat capsizing while he was attempting to row across a lake in an intoxicated condition. In Pete v. Lampi, 150 Minn. 423, 185 N. W. 653, *Id.*, second appeal, 162 Minn. 497, 203 N. W. 447, and Posch v. Lion B. & S. Co. 137 Minn. 169, 163 N. W. 131, expert medical testimony was received on the question of causal connection. No rule was announced in these cases on the question involved here.

There is a dearth of authority on this precise point. The only cases in point sustain the view that the question of causal connection is a fact question for the determination of the jury where the evidence is the same as it is here. In McCarty v. State ex rel. Boone, 162 Ind. 218, 70 N. E. 131, 132, the facts are in many respects quite similar. In that case one Boone, the deceased, had been drinking at defendant's saloon during the afternoon and evening and became drunk. He was left sitting on a porch. The temperature was below freezing. Twelve days later his body was found in an outhouse back of the saloon, his body covered with water. An autopsy showed no external marks of violence, or that the body contained alcohol. The physicians who performed a post-mortem examination testified that the deceased had not drowned, that he did not die of exposure, and that they could not state the cause of death. The court held that the evidence permitted the inference that the deceased died of alcoholism, that such death might have occurred before his body was placed in the vault, if it was put there by others, or that he died from the effects of the liquor after he had fallen into the vault, saying that, after all, reasoning in respect to inference is largely a matter of logic and that the only legal requirement should be that the premise should support the conclusion. The court said [162 Ind. 221]:

"In our opinion the jury was authorized to infer that Boone came to his death as a result of intoxication produced by such unlawful sales. The physicians may have been unable to venture a definite opinion as to the cause of death, but the jury was authorized to draw such an inference. In reasoning from cause to effect, that body followed the evidence, instead of indulging in a vague and speculative doubt as to whether some third person might have caused Boone's death."

That case controls here.

The case of Tidd v. Skinner, 225 N. Y. 422, 122 N. E. 247, 3 A. L. R. 1145, is similar in principle. The action was brought by a widowed mother to recover for loss of her son's services

claimed to have been caused by the use of large amounts of heroin unlawfully sold to her son by defendant, a druggist. The boy's earning power was claimed to have been impaired by changes in his physical condition and habits wrought by the use of the heroin. There was no medical testimony to show causal connection between the boy's condition and the use of heroin. Any finding to that effect necessarily rested on inference without the aid of expert testimony. The court held that such an inference was permissible. The decision of the appellate division, 171 App. Div. 98, 101, 156 N. Y. S. 885, 887, was affirmed, where the court said of the baneful and destructive effects of the drug when used to excess: "But it was not necessary to be a pharmacist to know this—every layman knows it."

Here the connection between the excessive use of intoxicating liquor and death was such as to permit the inference that the latter resulted from the former. Other causes are excluded by this record. The excessive drinking was evidence of the presence of intoxicating liquor in the boy's body in such quantities as to be a deadly agency. The boy's drunkenness with consequent loss of physical and mental function showed that the liquor was causing its well known pathological effects. To hold that the use of the liquor caused death is simply to say that a phenomenon which was manifesting its pathological effect had run its complete course. The inference is permissible since it accords with a well known effect of the only shown cause.

The suggestion that it appears from the companion case, Sworski v. Simons, 208 Minn. 201, 293 N. W. 309, that Clifford came to his death by suicide committed within one hour after he was put in his cell, is not important here. The parties saw fit to submit the case without such evidence. Our review is confined to the record before us. The evidence of suicide would introduce a new factor into the case, which would explain the immediate cause of death only. But it would not necessarily change the result.

Just how proof of suicide would help the respondents is not apparent. Under civil damage acts such as ours which permit recovery for injury to person, property, or means of support "by an intoxicated person" or by the intoxication of any person, "the courts are practically unanimous in holding that it is not necessary that the intoxication be the proximate cause of the injury," 15 R. C. L. p. 435, § 206, note 6; and that where suicide committed while intoxicated results in injury to support and maintenance, recovery may be had for such injury, Neu v. McKechnie, 95 N. Y. 632, 47 Am. R. 89; Bistline v. Ney Bros. 134 Iowa, 172, 111 N. W. 422, 13 L. R. A. (N. S.) 1158, 13 Ann. Cas. 196; Dice v. Sherberneau, 152 Mich. 601, 116 N. W. 416, 16 L. R. A. (N. S.) 765; Garrigan v. Kennedy, 19 S. D. 11, 101 N. W. 1081, 117 A. S. R. 927, 8 Ann. Cas. 1125.

In our opinion the evidence was sufficient to present fact questions on both issues. Hence it was error to direct the verdict.

Some of the witnesses were hostile and unwilling to disclose the facts. The trial court has the power and should, upon a retrial, remedy that situation.

Reversed and new trial granted.