**VILLAGE OF BROOTEN, a Municipal Corporation, Appellant,**

v.

**CUDAHY PACKING COMPANY, a corporation, and The Travelers Indemnity Company, a corporation, Appellees.**

No. 16367.

United States Court of Appeals
Eighth Circuit.

June 5, 1961.

Rehearing Denied July 10, 1961.

Rolland L. Thorson, Minneapolis, Minn., for appellant. Carroll, Thorson, Anderson & Cronan, Minneapolis, Minn., on the brief.

A. R. Johanson, Wheaton, Minn., for appellee. Johanson, Winter & Lundquist, Wheaton, Minn., on the brief.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

BLACKMUN, Circuit Judge.

This diversity action is one instituted by Cudahy Packing Company and its liability insurer, The Travelers Indemnity Company, against the Village of Brooten in Stearns County, Minnesota. The Village owns and operates a "liquor store" where it sells intoxicating liquors both "off sale" and "on sale". The suit rests on the Minnesota Civil Damage (or "dram shop") Act, now § 340.95 of Minnesota Statutes Annotated.[1] This statute reads:

"Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages sustained; * * *"

The plaintiffs seek to recover $29,019.-17. This is the sum of amounts paid by Travelers in settlement of personal injury and property damage claims and expenses arising from collisions on New Year's Eve, December 31, 1953, between an automobile driven by Arthur H. Raeker, a Cudahy salesman, and two other vehicles. The case was tried to the court and resulted in judgment for the plaintiffs.

On the afternoon of that last day of the calendar year, Raeker, who lived in Glenwood, Minnesota, was in Brooten on Cudahy business. He completed his work about 2:00 P.M., and spent the next two hours in Brooten's liquor store. During that period he purchased five or six drinks of intoxicating liquor. He then left the tavern, entered his automobile, and started out alone for Glenwood. A few miles out of Brooten he drove unnecessarily on his left hand side of the road in the lane intended for opposing traffic. He collided with an automobile owned and driven by Allan M. Olson and then with another owned and driven by Albert Bly. Each of these cars was proceeding toward Brooten. The weather

1. The amended complaint named the Village's liability insurer as an additional defendant and alleged that the action was brought under § 340.12, the bond requirement section of the Minnesota Liquor Control Act, as well as under § 340.95. The case against the insurer, however, was dismissed prior to trial and the action, as tried and appealed, rests on § 340.95.

and visibility were good. It was still light. The tarvia highway was clear and free of ice and snow.

With Dr. Olson in his car were his wife and their three children. Bly was alone. The five Olsons and Bly all sustained personal injuries and their automobiles were damaged.

At the time of the accident three insurance policies, pertinent here and each issued by Travelers, were outstanding. The first was a policy providing personal injury and property damage protection within stated limits. This was issued to Cudahy "and others" listed in attached schedules; one of these schedules named Raeker as an additional insured. Raeker apparently paid the premium on this policy. The second was a Comprehensive Automobile Liability Policy, with stated limits, issued to Cudahy and its subsidiary and affiliated companies. Raeker was not a named insured under this contract. The third was a Comprehensive Automobile Liability Policy also issued to Cudahy and its subsidiaries and affiliates. It effected a retrospective rate premium plan applicable for the 3-year period beginning October 1, 1953. By appropriate indorsement the first two policies, among others covering various Cudahy operations in the United States, Canada and Mexico, were incorporated in this plan.

Dr. and Mrs. Olson and one child instituted actions in federal court against Raeker and Cudahy. These and claims for the two other Olson children were settled during trial in 1954. The Olsons later asserted claims, presumably under § 340.95, against the Village of Brooten; these were settled in 1955. Bly's claims against Raeker and Cudahy were settled in 1956. Travelers also incurred expenses for investigation and fees. Specifically, these several payments were:

$8,000 to the Olsons by Brooten;
$23,250 to the Olsons by Travelers;
$3,250 to Bly by Travelers;
$554.95 to Bly's collision insurer by Travelers;
$1,964.22 for expenses by Travelers.

The total is $37,019.17; of this amount, $8,000 was paid by Brooten and $29,019.17 by Travelers. Cudahy, in view of the one policy's retrospective rate provisions and as a result of the payments made by Travelers, then paid Travelers $13,889. The net amount paid out by Travelers with respect to the Raeker accidents was thereby reduced to $15,131.17. Cudahy and Travelers then jointly instituted this action to recover the $29,019.17.

The trial court found that the Village, through its liquor store, sold intoxicating liquor to Raeker when he was obviously intoxicated; that the sale was illegal; that as a proximate result of that sale Raeker became further intoxicated; that as a proximate result of this intoxication he negligently operated his automobile so that he collided with the Olson and Bly cars; and that as a result of this negligence, the Olson and Bly personal injuries and automobile damages were sustained. The court concluded that both Cudahy and Travelers were proper parties plaintiff under § 340.95. Judgment against the Village was entered accordingly.

The Village argues on this appeal that Travelers does not fall within the category of persons given a cause of action under the statute; that, specifically, it does not qualify as an "other person"; that the payments Travelers made did not constitute an injury "in * * * property"; that Cudahy has failed to prove damage in a fixed amount; that even if it has proved damage with sufficient certainty, it also was not injured "in * * * property"; that in any event the rights of Travelers and Cudahy are no greater than those of Raeker who has no cause of action against the Village; that Travelers has no right of indemnity; that Travelers' payment of the claims resulted from its contractual liability to Cudahy and Raeker and the latter's intoxication was therefore not the proximate cause of its loss; and that the trial court erred in refusing to pass on certain requested findings.

Travelers and Cudahy urge that Travelers is an "other person" and Cudahy an "employer" within the statute; that both sustained injuries "in * * * property"; that Cudahy's loss was fixed; that Travelers and Cudahy have independent status under the statute which is not defeated or limited by Raeker's; that Travelers may recover, in any event, as an assignee of Cudahy; and that the illegal liquor sale was the proximate cause of the accident and of plaintiffs' losses.

In this appellate phase of the case no question is raised as to any of the following:

■ 1. That the Village's ownership and operation of its liquor store were authorized under M.S.A. § 340.07, subd. 5. Judicial notice of this perhaps could be taken in any event. Stabs v. City of Tower, 229 Minn. 552, 554, 40 N.W.2d 362, 365.

2. That Raeker's travel to and from Brooten and his presence there on December 31, 1953, were within the scope and course of his employment by Cudahy.

3. That an illegal sale of intoxicating liquor was made by the Village to Raeker on December 31, 1953. Although contested below, this is admitted by the Village in its brief here. We take it that the illegality lies in the sale of intoxicating liquor to Raeker when he was "obviously intoxicated"; this is prohibited by M.S.A. § 340.14, subd. 1. The admission, of course, eliminates an issue which often proves troublesome. See Strand v. Village of Watson, 245 Minn. 414, 421–424, 72 N.W.2d 609, 615–617.

4. That this illegal sale contributed to Raeker's intoxication and his intoxication was the proximate cause of the personal injuries and property damages sustained by the Olsons and by Bly.

5. That the sums paid by Travelers in settlement of the Olson and Bly claims were reasonable; that the payments were made in good faith; and that they were for the purpose of discharging possible legal liability of Raeker and Cudahy.

■ The elimination of these questions enables us to focus our attention upon what now becomes the primary issue, namely, whether an intoxicated person's employer, such as Cudahy, and the liability carrier, such as Travelers, of both that person and the employer may recover their respective losses, under the Minnesota Civil Damage Act, from the vendor making the illegal liquor sale. The Supreme Court of Minnesota has not passed upon this issue.[2] The matter comes to us, therefore, as one of Minnesota law of first impression. This causes us once again to refer to two principles well established by this court:

1. Because our task "is not to formulate the legal mind of the state, but merely to ascertain and apply it", Yoder v. Nu-Enamel Corporation, 8 Cir., 117 F.2d 488, 489, the problem here is the usual one of endeavoring to determine what the Supreme Court of Minnesota would declare the Minnesota law to be were this case before it. National Bank of Eastern Ark. v. General Mills, Inc., 8 Cir., 283 F.2d 574, 576.

2. The standard for review here on doubtful questions of state law is not whether the trial court has reached a correct conclusion but whether it has reached a permissible one, National Bellas Hess, Inc. v. Kalis, 8 Cir., 191 F.2d 739, 741, certiorari denied 342 U.S. 933, 72 S.Ct. 377, 96 L.Ed. 695; and the appellant's burden of showing misconception or misapplication of local law by the trial court is a heavy one, Milwaukee Insurance Company v. Kogen, 8 Cir., 240 F.2d 613, 615. We recognize that some of the usual reasons for this great reliance on a trial judge's "considered appraisal", namely, the presence of "factors of evaluation and judgment * * * at the local level, which are not available to us, such as unreported trial-court decisions, percolating judicial trends, accepted legal climate, and familiarity with prevailing

2. It has, however, been considered by two Minnesota trial courts in unreported opinions. These are referred to below.

professional thought and temper", Kasper v. Kellar, 8 Cir., 217 F.2d 744, 747–748, and the experience of a judge who has long practiced or served in the particular state, Standard Brands v. Bateman, 8 Cir., 184 F.2d 1002, 1011, certiorari denied 340 U.S. 942, 71 S.Ct. 505, 95 L.Ed. 679; King v. Monsanto Chemical Company, 8 Cir., 256 F. 2d 812, 815, have less effective application where the judge was one assigned from outside the state. Nevertheless, this court has not hesitated to apply the standard in that exact situation. Dierks Lumber & Coal Company v. Barnett, 8 Cir., 221 F.2d 695, 697. See also Mitton v. Granite State Fire Ins. Co., 10 Cir., 196 F.2d 988, 992. We have done the same where a district judge is called upon to decide, in a conflicts situation, a doubtful question of another state's law. Luther v. Maple, 8 Cir., 250 F.2d 916, 919; Perfection Oil Company v. Saam, 8 Cir., 264 F.2d 835, 839–840. We have no hesitancy therefore in regarding the rule as available and applicable in this case even though the judge who tried this Minnesota case was assigned from Nebraska.

With this lack of definitive Minnesota authority, we are compelled, in seeking the answer here, carefully to review and analyze the state's statutory and case law and to obtain such assistance as may be afforded by statutes and decisions in other jurisdictions.

*The Minnesota Statutes.* The pertinent Minnesota statutes are the Civil Damage Act, § 340.95, the aforesaid § 340.14, subd. 1, and perhaps, although it is not cited in the briefs, § 340.73, subd. 1. Of these, § 340.73 is the oldest. This is a crime statute making unlawful, as a gross misdemeanor, the sale of spiritous liquor to "any intoxicated person." [3] It has its genesis in L.1861, c. 53, and assumed its present specific reference to "any intoxicated person" in L.1887, c. 81.[4] § 340.14 is a regulatory statute which, by its first subdivision, prohibits the sale or furnishing of intoxicating liquor "to any person obviously intoxicated".[5] This came into being as a part of Minnesota's Liquor Control Act adopted following the repeal of the National Prohibition Amendment. Ex.Sess.L.1933, c. 46. The Civil Damage Act, § 340.95, was first enacted as L.1911, c. 175.[6] Its substance has not been changed since that time.[7]

We also note M.S.A., ch. 645, entitled "Interpretation Of Statutes". § 645.08

---

3. "It shall be unlawful for any person, except * * * to sell, * * * any spiritous, * * * liquors in any quantity, for any purpose, whatever, to any minor person, * * * or to any intoxicated person, * * * ".

4. The predecessor of § 340.73 appears to have been suspended, following the Eighteenth Amendment, by L.1919, c. 455. L. 1933, c. 130, however, repealed this 1919 Act, and prior existing laws again became operative except insofar as the were repealed by L.1933, c. 115. The Minnesota court has held that the former law, which is now § 340.73, was not completely repealed by implication by Ex.Sess.L. 1933, c. 46, now § 340.14, but that, to the extent that § 340.73 and § 340.14 are inconsistent, the latter, being the later in point of time, controls. Strand, supra, at pages 420–421 of 245 Minn., at pages 614–615 of 72 N.W.2d.

5. " * * * No intoxicating liquor shall be sold or furnished for any purpose to any person under the age of 21 years or to an habitual drunkard or to any person obviously intoxicated or to any of the persons to whom sale is prohibited by statute or by reason of sale to whom a penalty is provided by statute".

6. It has since appeared in general codifications as G.S.1913, § 3200; G.S.1923, § 3239; Mason's Minn.Statutes 1927, § 3239; and the present Minnesota Statutes, § 340.95. The statute thus is an old one. This is true of most of the Civil Damage Acts presently in effect in about twenty states. A number of them came into being in the last half of the nineteenth century. See 4 Villanova Law Review 575, 577, 588 (1959).

7. The obvious differences in tense between the statute's 1911 form and that of the present compilation appear to be revisor's changes. In Hahn v. City of Ortonville, 238 Minn. 428, 436, 7 N.W.2d 254, 261, it was said, "The language of the statute * * * has never been altered".

Another statute, not without importance, is § 340.12. This also is a part of the present Minnesota Liquor Control

incorporates the rule of *ejusdem generis*.[8] § 645.16 deals with legislative intent.[9] A court is to presume that the Legislature does not intend a result that is absurd or unreasonable. § 645.17(1). Laws uniform with those of other states are to be interpreted and construed so as to promote uniformity. § 645.22. These rules have been recognized generally as guides in Minnesota Civil Damage Act cases. Stabs, supra, at page 557 of 229 Minn., at pages 366–367 of 40 N.W.2d; Hahn v. City of Ortonville, 238 Minn. 428, 436, 57 N.W.2d 254, 261.

■■■■ These liquor traffic statutes were enacted in the exercise of the police power. State ex rel. Young v. Robinson, 101 Minn. 277, 287, 112 N.W. 269, 20 L.R.A.,N.S., 1127. The same thing has been said of the authorization for publicly owned liquor establishments. Stabs, supra, at page 559 of 229 Minn., at page 367 of 40 N.W.2d; Hahn, supra, at page 434 of 238 Minn., at page 260 of 57 N.W. 2d. A municipality's liquor operation is in both its governmental and its proprietary capacities and, in respect to the Civil Damage Act, is to be treated as a proprietary undertaking. Hahn, supra, at page 435 of 238 Minn., at page 260 of 57 N.W.2d.

*The Minnesota cases.* The Civil Damage Act, or its companion bond and liability insurance statute, § 340.12, has

---

Act. It requires an applicant for an "On sale" license to file a bond or, in the alternative, a liability insurance policy providing for the payment "of all sums which the insured shall become obligated to pay by reason of liability imposed upon him by law for injuries or damage to persons, other than employees, including the liability imposed upon the insured by reason of * * * Section 340.95". It further provides,

"(d) That the licensee, will pay to the extent of the principal amount of such bond or policy, and (any) damages for death or injury caused by or resulting from the violation of any provisions of law relating thereto, and in such cases recovery under this paragraph may be had from the surety on this bond or policy. The amount specified in such bond or policy is declared to be a penalty, the amount recoverable to be measured by the actual damages; provided, however, that in no case shall such surety be liable for any amount in excess of the penal amount of the bond or policy.

"All such bonds or policies shall be for the benefit of the obligee and all persons suffering damages by reason of the breach of the conditions thereof. * *" This, too, is an ancient statute originating close to a century ago. See Lynch v. Brennan, 131 Minn. 136, 154 N.W. 795, L.R.A.1916E, 269. The Minnesota court has held that a municipality owning and operating a liquor store is not required to have a license or to file a bond required by § 340.12. Stabs, supra, at pages 558–559 of 229 Minn., at page 367 of 40 N.W. 2d.

8. "645.08. Canons of construction
"In construing the statutes of this state, the following canons of interpretation are to govern, unless their observance would involve a construction inconsistent with the manifest intent of the legislature, or repugnant to the context of the statute:
 * * * * *
"(3) General words are construed to be restricted in their meaning by preceding particular words; * * *."

9. "§ 645.16. Legislative intent controls
"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions.
"When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.
"When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:
"(1) The occasion and necessity for the law;
"(2) The circumstances under which it was enacted;
"(3) The mischief to be remedied;
"(4) The object to be attained;
"(5) The former law, if any, including other laws upon the same or similar subjects;
"(6) The consequences of a particular intepretation;
"(7) The contemporaneous legislative history; and
"(8) Legislative and administrative interpretations of the statute."

been before the Minnesota Supreme Court, in one aspect or another, no less than 28 times.[10] In addition, the Act has been considered twice by the United States District Court for the District of Minnesota, Best v. Fedo, D.C.D.Minn. 1957, 153 F.Supp. 79, and Ruditis v. Gallop, D.C.D.Minn.1958, 162 F.Supp. 270, and once by this court, Ruditis v. Gallop, 8 Cir., 1959, 269 F.2d 50, reversing 162 F.Supp. 270. A study of these 31 opinions is necessary and instructive in ascertaining the attitude and approach to the Act by Minnesota's highest court.

It has been said generally, 30 Am. Jur., Intoxicating Liquors, § 520; 48 C.J.S. Intoxicating Liquors § 430, and by the Minnesota court, specifically, Sworski v. Colman, 204 Minn. 474, 477, 283 N.W. 778, 780; Beck v. Groe, 245 Minn. 28, 34, 70 N.W.2d 886, 891, 52 A. L.R.2d 875; Strand v. Village of Watson, supra, at page 421 of 245 Minn., at page

614 of 72 N.W.2d, that at common law there is no cause of action against the vendor of liquor in favor of one injured by the resulting intoxication of the vendee [11] and that the remedy provided by the Minnesota Civil Damage Act "is purely a statutory creation". Hahn v. City of Ortonville, 238 Minn. 428, 433, 57 N.W.2d 254, 259. Our problem therefore is one of statutory construction.

The Act's purpose has been described:

"Furthermore, the purpose of the 1934 act (the liquor control act) was to eliminate the evils incident to the selling and consumption of intoxicating liquor. The imposition of a liability for damages, resulting to a third party from an illegal sale of liquor under the civil damage act, § 340.95, is conducive to the attainment of the same purpose". Hahn, at pages 437–438 of 238 Minn., at pages 261–262 of 57 N.W.2d.

10. Koski v. Pakkala, 1913, 121 Minn. 450, 141 N.W. 793, 47 L.R.A.,N.S., 183; Dobrowoloske v. Parpala, 1913, 121 Minn. 455, 141 N.W. 803; Lynch v. Brennan, 1915, 131 Minn. 136, 154 N.W. 795, L.R.A.1916E, 269; Wunsewich v. Olson, 1917, 137 Minn. 98, 162 N.W. 1054, 2 A.L.R. 560; Posch v. Lion Bonding & Surety Co., 1917, 137 Minn. 169, 163 N.W. 131; Fest v. Olson, 1917, 138 Minn. 31, 163 N.W. 798; Gorse v. Gouze, 1918, 141 Minn. 97, 169 N.W. 423; Miles v. National Surety Co., 1921, 149 Minn. 187, 182 N.W. 996; Pete v. Lampi, 1921, 150 Minn. 423, 185 N.W. 653; Pete v. Lampi, 1925, 162 Minn. 497, 203 N.W. 447; Benes v. Campion, 1932, 186 Minn. 578, 244 N.W. 72; Sworski v. Colman, 1939, 204 Minn. 474, 283 N.W. 778; Sworski v. Coleman, 1940, 208 Minn. 43, 293 N.W. 297; Mayes v. Byers, 1943, 214 Minn. 54, 7 N.W.2d 403, 144 A.L.R. 821; Philips v. Aretz, 1943, 215 Minn. 325, 10 N.W. 2d 226; Fox v. Swartz, 1949, 228 Minn. 233, 36 N.W.2d 708; Cavin v. Smith, 1949, 228 Minn. 322, 37 N.W.2d 368; Stabs v. City of Tower, 1949, 229 Minn. 552, 40 N.W.2d 362; Dahlin v. Kron, 1950, 232 Minn. 312, 45 N.W.2d 833; Hahn v. City of Ortonville, 1953, 238 Minn. 428, 57 N.W.2d 254; Beck v. Groe, 1955, 245 Minn. 28, 70 N.W.2d 886, 52 A.L.R.2d 875; Strand v. Village of Watson, 1955, 245 Minn. 414, 72 N.W.2d 609; Adamson v. Dougherty, 1957, 248 Minn.

535, 81 N.W.2d 110; Schmidt v. Driscoll Hotel, Inc., 1957, 249 Minn. 376, 82 N.W. 2d 365; Hartwig v. Loyal Order of Moose, Brainerd Lodge No. 1246, 1958, 253 Minn. 347, 91 N.W.2d 794; Ritter v. Village of Appleton, 1958, 254 Minn. 30, 93 N.W.2d 683; Swanson v. Dugout, Inc., 1959, 256 Minn. 371, 98 N.W.2d 213; Randall v. Village of Excelsior, 1960, 258 Minn. 81, 103 N.W.2d 131. These cases are gathered in this footnote in the hope that their citation here will simplify the reading of this opinion. They will usually be referred to by their respective primary names.

11. With a possible qualification for certain special situations, as where there is wanton disregard of the vendee's welfare, or where he is a known habitual drunkard, and the like. See, for example, Pratt v. Daley, 55 Ariz. 535, 104 P.2d 147, 152, 130 A.L.R. 341. The common law rule is said to rest on the theory that "the proximate cause of the injury is the act of the buyer in drinking the liquor and not the act of the vendor of intoxicating liquor in selling it". Beck, supra, at page 34 of 245 Minn., at page 891 of 70 N.W.2d. See also Swinfin v. Lowry, 1887, 37 Minn. 345, 34 N.W. 22, where the plaintiff's damages were held to be too remote to be the proximate result of the defendant's providing liquor to the person injuring the plaintiff.

" * * * its principal objective is the imposition of liability for damages caused by the intoxication of any person upon the dealer, who, by illegally selling intoxicating liquors, caused such intoxication". Adamson, at page 542 of 248 Minn., at page 115 of 81 N.W.2d.

■ Although the Civil Damage Act and the Minnesota Wrongful Death Act, § 573.02, have been jointly described by the words "These enactments are remedial", Beck, at page 34, of 245 Minn., at page 891 of 70 N.W.2d, the two have been distinguished and said to be "wholly unrelated [in] scope and purpose". Ritter, at page 38 of 254 Minn., at page 688 of 93 N.W.2d; Beck at page 35 of 245 Minn., at page 892 of 70 N.W.2d; Adamson, at page 538 of 248 Minn., at page 112 of 81 N.W.2d. Thus recovery under the Wrongful Death Act does not in itself preclude a subsequent action under the Civil Damage Act, although compensation obtained in the first suit will be regarded as *pro tanto* satisfaction of that sought in the second suit, Hartwig, at page 358 of 253 Minn., at page 803 of 91 N.W.2d; Ritter, at pages 38–39 of 254 Minn., at page 688 of 93 N.W.2d; Ruditis, at page 54 of 269 F.2d, or, if the facts justify it, complete satisfaction. Adamson, at page 542 of 248 Minn., at page 115 of 81 N.W.2d.

■ The Minnesota court at times has characterized the Civil Damage Act as penal or admonitory, Fox at page 237 of 228 Minn., at page 710 of 36 N.W.2d; Hahn at page 436 of 238 Minn., at page 261 of 57 N.W.2d; Adamson, at page 542 of 248 Minn., at page 115 of 81 N.W.2d; Schmidt, at page 379 of 249 Minn., at page 367 of 82 N.W.2d; Hartwig, at pages 357–358 of 253 Minn., at pages 802, 803 of 91 N.W.2d; see Ruditis, at page 53 of 269 F.2d, or even "highly penal in its nature" and hence "to be strictly construed in the sense that it cannot be enlarged beyond its definite scope". Beck, at page 34 of 245 Minn., at page 891 of 70 N.W.2d.[12] On the other hand, the Minnesota court has characterized it as remedial, Hahn, at page 436, of 238 Minn., at page 261 of 57 N.W.2d; Beck, at page 34 of 245 Minn., at page 891 of 70 N.W.2d; Schmidt, at page 379 of 249 Minn., at page 367 of 82 N.W.2d, or compensatory in nature, Adamson, at page 542 of 248 Minn., at page 115 of 81 N.W.2d; Hartwig, at pages 358–359 of 253 Minn., at page 803 of 91 N.W.2d; Randall, at page 134 of 103 N.W.2d. Also,

"Section 340.95 does not manifest a legislative intent to protect the beneficiaries of the statute from their own failures *or to impose a penal liability.*" (Emphasis added.) Mayes, at page 63 of 214 Minn., at page 407 of 7 N.W.2d; Adamson, at page 541 of 248 Minn., at page 114 of 81 N.W.2d.[13]

It is thus to be liberally construed. Hahn, at page 436 of 238 Minn., at page 261 of 57 N.W.2d; Beck, at page 34 of 245 Minn., at page 891 of 70 N.W.2d.

These differing descriptions naturally present some element of confusion as to the Minnesota court's basic attitude toward the Act.[14] We suspect, however, that the inconsistency of characterization is more apparent than real and that the ostensible difference in expression has been due to the nature of the issue before the court (as, for example, whether contributory negligence may be a factor) in

12. The companion bond statute, § 340.12, also has been described as penal. Mayes at page 63 of 214 Minn., at page 407 of 7 N.W.2d; Philips, at page 330 of 215 Minn., at page 228 of 10 N.W.2d; Fox, at page 237 of 228 Minn., at page 710 of 36 N.W.2d; Adamson, at page 541 of 248 Minn., at page 114 of 81 N.W.2d.

13. "There is nothing in the language of the Act to require that it be construed as a penal provision. Furthermore, a means of imposing liability on dealers as a penalty for illegally selling liquor already exists apart from the Civil Damage Act. (§ 340.12) * * * In view of this it seems unlikely that the Civil Damage Act was also intended to be a penalty." 42 Minn.L.Review, 145, 147 (1957).

14. See 42 Minn.L.Review, 298, 300 (1957).

the particular case. We feel that the correct characterization of the statute, and the one intended by the Minnesota court to have general application, is a dual one:

"It is to be borne in mind that civil damage acts, although penal in nature, are also remedial in character and, according to the prevailing view, are to be liberally construed *so as to suppress the mischief and advance the remedy.*" Hahn, at page 436 of 238 Minn., at page 261 of 57 N.W.2d. See also Beck, at page 34 of 245 Minn., at page 891 of 70 N.W. 2d.

We are fortified in this conclusion by the court's observation in Adamson, at page 542 of 248 Minn., at page 114 of 81 N.W. 2d:

"The language of the Beck case to the effect that a suit under the Civil Damage Act is a means to impose a penalty on a dealer of intoxicating liquor was used to indicate that the defenses of contributory negligence or lack of guilty knowledge are not available in an action for damages under § 340.95; but not, as plaintiff suggests, to determine that this section was other than compensatory in nature."

One might be prompted to demonstrate narrowness or strictness of the statute by noting that it has been held not to provide a cause of action (1) for the intoxicated person himself, Mayes, at page 63 of 214 Minn., at page 407 of 7 N.W. 2d; Stabs, at page 565 of 229 Minn., at page 371 of 40 N.W.2d; even though he be a minor, Cavin; Randall, at 133 of 103 N.W.2d; see Sworski v. Colman, at page 477 of 204 Minn., at page 780 of 283 N.W.; (2) for an injured employee where workmen's compensation is available, Fox; (3) for one claiming damages resulting from alleged unlawful sales, under the Minnesota beer act, of 3.2 beer defined as non-intoxicating, Beck; or (4) for a person, such as a wrongful death trustee, outside the list of beneficiaries named in the statute, Beck, at page 36

of 245 Minn., at page 892 of 70 N.W.2d. Also, in Beck, at page 44 of 245 Minn., at page 897 of 70 N.W.2d the court said:

"The civil damage act requires that both the right and the remedy must be within the terms of the statute. The particular statutory provisions of each state are most important and are controlling both as to the right and the remedy. * * * We must not overlook in construing our civil damage act that the right and the remedy created by this statute is exclusive. No right of action exists save that expressly given by statute, and the remedy prescribed cannot be enlarged except by further legislative enactment."

Similarly, one might attempt to demonstrate liberality of the statute by:

1. Its clear availability to those named therein as beneficiaries as, for example, the wife, Benes, or widow of the intoxicated person, Fest; Pete; the minor child of the vendee, Adamson; the mother of an adult vendee, see Wunsewich; the parent of an intoxicated minor, Dobrowoloske; Sworski v. Coleman; the widow of an innocent third person, Koski, the wife and minor children of a third person, see Hartwig; the adult daughter of a third person, Miles; and the injured third person himself, Hahn; Strand; Schmidt; Ritter.

2. The holding that the illegal sale need not be the sole cause of the intoxication. Fest. It "is enough if it is a co-operating, concurring, or proximately contributing cause". Hahn, at page 432 of 238 Minn., at page 58 of 57 N.W.2d; Randall, at page 134 of 103 N.W.2d.

3. The holding that the relief afforded by the statute is not restricted to sales but also extends to situations where liquor is illegally given or otherwise made available. Hahn, at page 430 of 238 Minn. (footnote), at page 257 of 57 N.W. 2d; Sworski v. Coleman, at page 45 of 208 Minn., at page 298 of 293 N.W.

4. The holding, against the argument of the governmental-proprietary test, that a municipal corporation is a "per-

son" and hence subject to suit, even though the Act's 1911 origin long antedated the 1934 authorization for municipal liquor dispensaries in Minnesota. Hahn.

5. The holding that "the establishment of liability under the statute is not dependent on a finding of negligence." Hahn, at page 433 of 238 Minn., at page 259 of 57 N.W.2d; Beck, at page 34 of 245 Minn., at page 891 of 70 N.W.2d.[15]

6. The holding that intent is immaterial and therefore not a necessary or relevant feature of a civil damage action. Beck, at page 36 of 245 Minn., at page 892 of 70 N.W.2d; Adamson, at page 541 of 248 Minn., at page 114 of 81 N.W.2d.

7. The holding that the Act is available where Minnesota illegal sales resulted in an out-of-state accident and ensuing damages. Schmidt.

8. The holding that the cost of medicine and medical attendance may be recovered. Dobrowoloske.

9. The holding that a wife has a cause of action against the remote manufacturer of moonshine supplied her husband by a buyer. Benes.

10. The holding in the bond cases that a surety on the bond is severally liable and may be sued alone, Miles; see Posch; that while a liquor dealer's bond may run to the state, this does not preclude the plaintiff's private action for breach of the bond, Koski; Lynch; and that suit on a vendor's bond may be brought without obtaining leave of court, Wunsewich.

This review of the case law leads us to conclude that the Supreme Court of Minnesota has adopted a generally broad and liberal attitude toward the state's Civil Damage Act. This is apparent both from expressions in the Minnesota opinions and from their specific holdings.

*Two Minnesota Trial Court Cases.* Defendant has filed with its briefs copies of two unreported Minnesota trial court opinions.[16] Each of these holds that its insurer-plaintiff is not entitled to the benefit of § 340.95. The two trial court decisions are of interest to us and we may properly consider them. They are not, however, necessarily controlling on a question of state law not yet determined by Minnesota's highest court. We are free to proceed to make our own determination of what the Supreme Court of Minnesota "would probably rule in a similar case". King v. Order of United Commercial Travelers, 333 U.S. 153, 161, 162, 68 S.Ct. 488, 492, 92 L.Ed. 608; Hove v. Atchison, 8 Cir., 238 F.2d 819, 823; Eckman v. Baker, 3 Cir., 224 F.2d 954, 956; State of California, Department of Employment v. Fred S. Renauld & Co., 9 Cir., 179 F.2d 605, 609.[17] That Court has said, " * * * the law of this state is what we say it is when the federal courts are called upon to interpret and apply it." Swanson v. J. L. Shiely Co., 234 Minn. 548, 554, 48 N.W. 2d 848, 852. We suspect that the reliance by these two Minnesota trial judges upon the Illinois New Amsterdam case, cited infra, is over-placed and is substantially weakened by the later Illinois cases we note below.

*Other States.* Although a number of other states[18] have or have had Civil

15. Compare Mayes, at page 62 of 214 Minn., at page 407 of 7 N.W.2d and Philips, at page 330 of 215 Minn., at page 228 of 10 N.W.2d, for similar conclusions with respect to contributory negligence, wilfulness, intent, and the like, as defenses to an action on the statutory bond.

16. Iowa National Mutual Insurance Company v. Village of Appleton, District Court of Swift County, 1957; Lund v. Village of Watson, District Court of Chippewa County, 1959, reversed on other grounds, Minn., 109 N.W.2d 564.

17. These Minnesota lower court decisions are not of the kind deemed precedential as to state law, illustrated by West v. American Telephone & Telegraph Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139, and distinguished by the Supreme Court in King. But see Kimble v. Willey, 8 Cir., 204 F.2d 238, 242, and Judge Johnsen's dissent, at page 244, footnote 4.

18. See, for example, Alabama (Code, tit. 7, § 121); Connecticut (Rev.Stat. § 30–102); Illinois (Rev.Stat., ch. 43 § 135);

Damage Acts similar to Minnesota's, there appear to be decisions pertinent to our present problem only in Michigan, North Dakota and Illinois. The parties cite and greatly stress these cases as best suits their respective positions. We note them in some detail for such light as they afford:

*Michigan.* This state's statute, now Stat.Ann. § 18.993, Comp.Laws 1948, § 436.22, provides a right of action for "Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by an intoxicated person by reason of the unlawful selling * * * ". Clinton v. Laning, 61 Mich. 355, 28 N.W. 125, upheld a father's claim against a saloon keeper for loss represented by the amount reasonably required to support an adult son rendered helpless by intoxication. The plaintiff was thus "injured in * * * property". That this had reference to the civil damage act then in effect in Michigan is clear from People v. Laning, 73 Mich. 284, 41 N.W. 424. McDaniel v. Crapo, 326 Mich. 555, 40 N.W.2d 724, involved a situation where a partner permitted his minor son to use the partnership's truck to attend a ball game. On his way the boy purchased beer from the defendant. This made him intoxicated. While driving in this condition he hit an automobile and damaged it and injured its driver. A resulting judgment against the partnership was paid by its insurer. The partnership and the insurance company then sued the tavern keeper and its surety. The trial court's judgment on the pleadings in favor of the defendant was reversed. The court said, at pages 725–726 of 40 N.W.2d:

"It is argued that Michigan Mutual does not (have) a cause of ac-

tion either as a 'person' within the meaning of this statute or by assignment from such a 'person'.

"Both under the statute quoted and under a former similar statute, the words 'or other persons' have been given a broad interpretation. * * * Of course, the term is not all inclusive. The intoxicated person himself and those who contributed to his intoxication have no right of action. * * *

"H & M Motor Sales sustained a direct injury under the statute by the damage to its truck and by the judgments against it. Any negligence attributable to the partnership under the uniform motor vehicle act, * * * does not preclude its recovery against the Crapos and their surety. * * * The partnership is a 'person' within the language of the statute.

"Although plaintiff * * * may not have a cause of action in its own right, see Economy Auto Ins. Co. v. Brown, 334 Ill.App. 579, 79 N.E. 854, the controlling statute, supra, does not prohibit, and the 'real party in interest' statute, * * * expressly permits an assignment of the cause by an injured 'person'.

"Michigan Mutual Liability Company, as assignee under its contract with the partnership, stands sufficiently in the partnership's shoes to maintain this action." [19]

*North Dakota.* This state's statute, now Cent.Code, § 5–01–21, provides "Every wife, child, parent, guardian, employer, or other person who shall be injured in person, property, or means of support, by any intoxicated person, or in consequence of intoxication, * * *

Iowa (Code, § 129.2); Maine (Rev.Stat. ch. 61, § 95); Michigan (Stat.Ann. § 18.993); New York (Civil Rights Law, § 16); North Dakota (Cent.Code, § 5–01–21); Ohio (Rev.Code § 4399.01); Rhode Island (Gen.Laws § 3–11–1); Vermont (Stat.Ann., tit. 7, ch. 17, § 501); Washington (Rev.Code § 71.08.080); Wisconsin (Stat. § 176.35).

19. Flower v. Witkovsky, 69 Mich. 371, 37 N.W. 364 and Hylo v. Michigan Surety Co., 322 Mich. 568, 34 N.W.2d 443, are instances of what the Michigan court regards (at page 725 of 40 N.W.2d) as indicative of a broad interpretation of words in its statute. See also La Blue v. Specker, 358 Mich. 558, 100 N.W.2d 445.

shall have a right of action * * * against any person who * * * contrary to the provisions of any statute * * *". Iszler v. Jorda, N. D., 80 N.W. 2d 665, 64 A.L.R.2d 696, was an action by the parents of an unmarried minor killed in an automobile accident after he had been served intoxicating liquor in the defendant's tavern. A jury trial resulted in a verdict for the plaintiffs. The North Dakota Supreme Court affirmed, saying, at pages 668–669 of 80 N.W.2d:

> "There remains the question of whether the injuries suffered by the plaintiffs were damages to property within the meaning of the statute. Appellants construe the word property as used in the statute to mean only tangible real or personal property. We think that this construction is incorrect. It appears to be contrary to the rule generally applied under similar statutes in other states and in conflict with the express provisions of other North Dakota Statutes. * * * It seems clear too that the payment by the father of the son's funeral expenses, which he was obligated to pay, impaired his total assets in that amount and likewise was an injury to property."

*Illinois.* This state has had a dramshop act since 1872. See Cunningham v. Brown, Ill., 174 N.E.2d 153, and Ogilvie, History and Appraisal of the Illinois Dram Shop Act, Univ. of Ill. Law Forum, Vol. 1958, 175, 176. In its pre-1955 form, as found in Rev.Sts. (1947), ch. 43, § 135, the Act granted a right of action to "Every husband, wife, child, parent, guardian, employer or other person, who shall be injured, in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, * * *". In the cases construing this form, the Illinois court held (1) that the statute was penal or "highly penal" in nature and should be strictly construed, Hyba v. C. A. Horneman, Inc.,

302 Ill.App. 143, 23 N.E.2d 564, 565; Howlett v. McGarvey, 334 Ill.App. 512, 79 N.E.2d 864, 867; (2) that at the same time, it was remedial and should be so construed as to suppress the mischief and advance the remedy, Economy Auto Ins. Co. v. Brown, 334 Ill.App. 579, 79 N.E.2d 854, 855–856; Howlett v. Doglio, 402 Ill. 311, 83 N.E.2d 708, 712, 6 A.L.R.2d 790; New. Amsterdam Casualty Company v. Gerin, 9 Ill.App.2d 545, 133 N.E.2d 723, 725; (3) that the words "injured, in * * * property" meant only real and tangible personal property and did not cover "pecuniary injuries" of the kind contemplated by the Illinois Injuries (wrongful death) Act, Rev.Sts. (1947) ch. 70, par. 2, Howlett v. Doglio, supra, at pages 712, 714 of 83 N.E.2d, so that "A pecuniary loss is not covered", Eager v. Nathan, 14 Ill.App.2d 418, 144 N.E.2d 629, 632; (4) that the rules of *expressio unius exclusio alterius* and *ejusdem generis* preclude an insurance company's qualifying as a "person", and, hence, as a party plaintiff, Howlett v. Doglio, supra, at pages 713–714 of 83 N.E.2d; New Amsterdam, supra, at page 725 of 133 N.E.2d; Eager, supra, at page 632 of 144 N.E.2d; (5) that an insurance carrier's loss, not being directly caused by the intoxicated person, was necessarily a loss "in consequence of the intoxication", that this phrase of the statute, in contrast to direct injuries, necessitated proximate causation, and that causal connection was absent because of the intervening factor consisting of the insurance contract itself, Economy, supra; (6) that this is so even with respect to an action instituted in the name of the insured "for the use of" the insurer, Eager, supra, and (7) that "it is not conceivable * * * just how * * * the broad purposes of the statute" would be promoted by permitting a carrier to shift its business risks to dramshop keepers, Economy, supra, at page 858 of 79 N.E.2d.

The Illinois Legislature amended that state's Act in 1955 (effective July 1, 1956) and, among other changes, elim-

inated the list of beneficiaries.[20] The statute now reads "Every person, who shall be injured, in person or property by any intoxicated person, shall have a right of action * * *". Rev.Sts. (1955), ch. 43, § 135. The cases under the amended statute hold (1) that the change was presumably due to the Legislature's awareness of the earlier cases, Dworak for Use of Allstate Ins. Co. v. Tempel, 18 Ill.App.2d 225, 152 N.E.2d 197, 200; Town of City of Champaign v. Overmeyer's Inc., 18 Ill.App.2d 523, 152 N.E.2d 752, 754; (2) that the *ejusdem generis* rule no longer applies, Standard Industries, Inc. v. Thompson, 19 Ill. App.2d 319, 152 N.E.2d 500, 501; (3) that a township is a "person" within the statute, Town of City of Champaign, supra, at page 754 of 152 N.E.2d; (4) that a corporation is too, Standard Industries, supra, at page 502 of 152 N.E. 2d; (5) that the term "every person" includes an insurance corporation, Dworak, supra, at page 200 of 152 N.E. 2d; Standard Industries, supra, at page 502 of 152 N.E.2d; (6) that while the words "in * * * property" remain in the statute, an injury in property is equated to a lessening of one's estate, other than by personal injury or contract breach, and is not confined to direct physical damage to the property itself, Fortner v. Norris, 19 Ill.App.2d 212, 153 N.E.2d 433, 435; (7) that an insurer, at least of an innocent third person, while it still may not have a "direct right" under the statute is not rendered remediless but may, by action in the name of the insured for the insurer's use, and through subrogation, seek and obtain relief for its losses, Standard Industries, supra, at pages 502–503 of 152 N.E.2d; Dworak for Use of Allstate Ins. Co. v. Tempel, 17 Ill.2d 181, 161 N.E.2d 258, 263–264; (8) that this route has been described as "apparently overlooked" in the earlier cases and as one actually available prior to the 1955 amendment, Dworak, supra, at page 200

of 152 N.E.2d, and (9) that the argument about the shifting of the economic burden has lost much of its force. This last seems to rest on a recognition of today's insurance realities; on the fact of routine coverage by tavern operators; on a realization that premiums will be geared to losses; on a renewed emphasis on the purpose of the statute; and on the indirect discipline, through fear of losing insurance or of prohibitive premiums, upon a saloon keeper to maintain an orderly place. Standard Industries, supra, at pages 503–504 of 152 N.E.2d, and Dworak, supra, at page 264 of 161 N.E.2d.

We recognize (1) that the Michigan statute is different from the Minnesota statute when it speaks of injuries in person or property, means of support "or otherwise"; (2) that the Illinois statute, in contrast to others, including Minnesota's, does not confine its remedy to the victim of a person made intoxicated by an *illegal* act; (3) that the earlier Illinois cases are narrow in their approach to relief under the statute, and (4) that the greater liberality of the later Illinois cases was triggered by the 1955 amendment. The strictness of the early Illinois cases, however, may be largely due to the statute's very inclusion of the "innocent" as well as the "guilty" dramshop operator and in part due to the stressed difference in language between that state's Injuries Act and its Civil Damage Act; then, too, the later Illinois cases seem to contain expressions of judicial relief at finding in the amendment a means of avoiding earlier restrictive comments. All in all, and in spite of differences in verbiage, we regard the general atmosphere of these Michigan, North Dakota and later Illinois cases as illustrative of a broad and liberal modern approach to these old dramshop acts, as more helpful to the present plaintiffs than to the defendant, and as likely influential authority upon the Minnesota court in the interpretation of its statute.

---

20. "This was clearly a broadening of the classes of persons who might have a remedy under the act, * * *". Ogilvie, supra, p. 186 of Vol. 1958, Univ. of Ill. Law Forum.

Having reviewed this background material, we may return to the particular plaintiffs and the Minnesota statute now before us. Inasmuch as neither Cudahy nor Travelers can sustain its action on common law principles in Minnesota, each must find its remedy in § 340.95. Each must qualify as one of the beneficiaries of that statute and each must sustain injury "in * * * property".

A. Is Cudahy a possible plaintiff under § 340.95? Cudahy was the employer of Raeker. It would seem, therefore, that Cudahy clearly qualifies as a plaintiff, through the word "employer", as one of the group intended by the Legislature to be beneficiaries of the Civil Damage Act. While the Village has not raised the point, we realize that one could argue that the employer contemplated by the statute is the employer of an innocent third person rather than the employer of an intoxicated vendee. We find no authority, however, which takes so narrow an approach. There is obviously no question that the wife, child and parent named as beneficiaries in the statute refer to persons who hold that relationship to an intoxicated vendee. We therefore readily conclude that the trial court's holding that Cudahy was an employer within the terms of the Minnesota Act was a permissible one. Whether Cudahy also qualifies as an "other person" within the statute need not be separately considered but this is governed, in any event, by what we have to say about Travelers.

B. Is Travelers a possible plaintiff under § 340.95? It is obviously not a "husband, wife, child, parent, guardian, employer" and thus must qualify, if at all, as an "other person".

The defendant urges, first, that the rule of *ejusdem generis* embraced in § 645.08 and often recognized and applied by the Minnesota court in non-civil damage cases, see 17 Dunnell's Minnesota Digest § 8977, and cases cited, is fully applicable here and defeats Travelers. The usual rationale of the rule has been adopted by the Minnesota court. Orme v. Atlas Gas & Oil Co., 217 Minn. 27, 39, 13 N.W.2d 757, 764–765. But in Minnesota, as elsewhere, the rule is not to be applied inflexibly. § 645.08 itself recognizes that it is subject to the manifest intent of the Legislature and to obvious repugnancy to the statute's context. The rule is to "afford a mere suggestion to the judicial mind", Benson v. Chicago, St. P., M. & O. Ry. Co., 75 Minn. 163, 167, 77 N.W. 798, 799, and "has but one object in view, namely, the ascertainment of the intent of the statute", Westerlund v. Kettle River Co., 137 Minn. 24, 28, 162 N.W. 680, 682. While the first five beneficiaries named in § 645.08 do have blood or marriage relationship in common and thus could be said to constitute a class, the succeeding term "employer" is different, destroys any category of that kind, and opens the way to a broader interpretation of "other person". While § 645.44, subd. 7, provides that the word "person" as used in the Minnesota statutes "may extend and be applied to bodies politic and corporate", we must observe that this is not equivalent to a requirement that the word's every use be that broad. The same section in subd. 15 provides that the word "may" is permissive and the restrictive language in subd. 1, "unless another intention clearly appears", is also indicative. Furthermore, the Minnesota court, in Stabs, flatly held that the word as used in the companion § 340.12 does not include a municipality, that the meaning prescribed by § 645.44 is permissive, and that legislative intent must be given effect. On the other hand, the court had no difficulty, when it was considering the defense aspect of § 340.95 in the later Hahn case, in concluding that the word "person" did include a municipality engaged in selling liquor. An earlier ruling by the Minnesota Attorney General was to the same effect and with specific reference to the Civil Damage Act. A.G.O. No. 198, 1943–4 (August 21, 1944). Compare also the inclusive definition of "person" in the Minnesota liquor control acts, § 340.07, subd. 1 and § 340.401, subd. 6, both of which relate

themselves to § 645.44. In the light of the statute's structure of these other Minnesota statutes, and of this case history, the rule of *ejusdem generis* cannot be said clearly to operate to exclude Travelers as a plaintiff here.

The defendant argues, secondly, that the title[21] given to the Civil Damage Act when it was originally adopted in 1911 is significant and requires the exclusion of an insurer as a plaintiff. The suggestion is that the references to "certain persons" and "certain cases" are restrictive. The Minnesota court has held that an Act's title may be considered in aid of construction and in ascertaining legislative intent. State v. Northwestern States Portland Cement Co., 258 Minn. 162, 103 N.W.2d 225, 227; County of Hennepin v. City of Hopkins, 239 Minn. 357, 362, 58 N.W.2d 851, 854. But the title is not always of decisive significance. See Dunnell's Minnesota Digest § 8964, and cases cited. The phrase "in certain cases" has been held restrictive. LaBere v. Palmer, 232 Minn. 203, 206, 44 N.W.2d 827, 829. See State v. Northwestern States Portland Cement Co., supra, at page 226 of 103 N.W.2d. We may grant that both phrases of the Act's title are intended to be restrictive. This, however, adds little to the solution of our problem. Restriction is present by the exclusion, well settled in Minnesota, of the intoxicated vendee from the benefits of the statute. The title, therefore, gives the defendant little comfort.

The defendant presses upon us, finally, the holdings in the Illinois and the two Minnesota trial court cases, supra, involving insurer plaintiffs. As to these, our general comments above are specifically applicable here.

We therefore cannot say that the trial court's conclusion that Travelers may be a plaintiff under the statute is not a permissible one.

C. Is Travelers injured "in * * * property" under § 340.95? The statute does not define "in * * * property." [22]

In Beck v. Groe, supra, the Minnesota court said at page 45 of 245 Minn., at page 897 of 70 N.W.2d:

" * * * the recovery for pecuniary loss contemplated by the Minnesota wrongful death act is not authorized by the civil damage act which specifies only injuries in person, or property, or means of support and is penal in scope."

We have, however, noted the court's opposing and repeated references to the statute as being remedial and we are inclined to the view that the language just set forth was intended primarily to distinguish the Civil Damage Act from the Minnesota statutory action for wrongful death and does not constitute a holding that the term "property" is confined to real and tangible personal property.

Most of the older cases under the dramshop acts involved only damages to real or tangible personal property and no issue was raised therein as to the meaning of the word "property" in the applicable statute. Some cases, however, do involve this very issue. Specifically, these include the Illinois cases of Howlett and Eager, both supra. But, as we have also noted, the North Dakota Iszler case is flatly contrary on this point as is the Michigan Clinton case, and, perhaps, the implication of the Michigan McDaniel case. Furthermore, there are cases, even in Illinois, where, while no issue is raised, loss by way of pecuniary injury has been recovered. Danley v. Hibbard, 222 Ill. 88, 78 N.E. 39; Haw v. 1933 Grill, 297 Ill.App. 37, 17 N.E.2d 70. See Pearson v. Renfro, 320 Ill.App. 202, 50 N.E.2d 598, 601. To this list may be added the Minnesota Dobrowoloske case, supra [121 Minn. 455, 141 N.W.

21. "An Act giving a right of action to certain persons, for injuries caused by any intoxicated person, or by the intoxication of any person, against any person causing the same in certain cases."

22. With respect to both crimes, § 610.-02(9), and the state income tax, § 290.-01, subd. 17, the term "property" is broadly defined to include intangibles.

803], where the court upheld a plaintiff's judgment elements of which were "medicine and medical attendance furnished to the plaintiff's minor son" who was the intoxicated vendee.

We think, therefore, that it cannot be said with assurance that the Minnesota court would hold that Travelers was not injured "in * * * property" within the meaning of the Civil Damage Act.

 D. Is Cudahy injured "in * * * property" under § 340.95? So far as this question concerns the issue of damages pecuniary in nature it is governed by what we have just said with respect to Travelers. The defendant, however, additionally argues that Cudahy's pecuniary loss is not recoverable because its amount was dependent upon the retrospective rate feature of its contract with Travelers and because the proof submitted failed to show loss to Cudahy in a final and definite amount.

The ascertainment of any ultimate additional premium due from an insured under a retrospective rate provision, dependent, as it is, upon experience, upon agreed minimum and maximum premiums, and upon the necessity of both receiving and processing to a conclusion all claims arising during the policy period, is necessarily a complicated procedure. Here, however, it is a fact that a total of $29,019.17 was paid out by Travelers in settlement of the Olson and Bly claims; it is a fact that Cudahy paid Travelers an additional $13,889 as a result of the Raeker accidents; and it is a fact that the larger figure represents, as the defendant in its brief characterizes it, "a fixed and absolute single loss". It may well be that at the time of this payment by Cudahy to Travelers the exact amount of additional premium, if any, due Travelers under the retrospective feature of the policy was not determinable; the entire experience for the policy period was not then known, the limitations period for the policy term had not yet expired, and there had been, in the alternative, no agreement effecting a final retrospective computation. All this, however, does not provide a defense for the Village. The joint claim here is for the larger figure of $29,019.17. How that amount is divided between Travelers and Cudahy is their problem and their issue and is not something of which advantage may be taken by the defendant. This action is one brought jointly by Travelers and Cudahy and we have no objection from either of them as to the District Court's division of the total judgment.

 E. Are the rights of Cudahy and Travelers limited by defenses which would be available to the defendant against Raeker? The defendant argues that because Raeker, the intoxicated vendee, has no cause of action against the Village, under the authority of the Mayes, Stabs, Cavin, Randall and Sworski cases, supra, neither Raeker's employer nor his and its insurer may occupy any better position against the Village. It also argues that the negligence of Raeker is to be imputed to his employer Cudahy and that Travelers has no right of indemnity against the Village. We think that the complete answer to these several arguments lies in the important fact that this action rests upon the Civil Damage Act, upon its application to the illegal liquor sale by the Village, and upon its availability to an employer and to an "other person", just as to a wife or child, without disqualification by reason of their relationship to the intoxicated vendee. The situation is different from the more usual one where an action is founded on common law concepts of negligence and indemnity rights.

 F. Was the defendant's illegal liquor sale the proximate cause of Travelers' payment? The defendant argues that Travelers' loss was occasioned by the issuance of its policies and its contractual liability thereunder; that the illegal sale and Raeker's intoxication merely furnished a condition by which the loss was made possible; that Raeker's intoxication was therefore not the proximate cause of the payment; and that Travelers, in any event, undertook a calculated risk, part of and normal for the insurance business, in issuing its

policies. This approach does find support in the earlier Illinois Economy, New Amsterdam and Eager cases, and in the later case of Dworak v. Tempel, all supra. We stress again, however, the unlimited application of the Illinois Act to all liquor sales, those legal as well as those illegal, and we surmise, as we have indicated above, that this fact was influential in the Illinois court's endeavor to draw some boundary for its statute's application. We ourselves would have no difficulty, if the determination were ours to make, in finding that the illegal sale here was the proximate cause of Travelers' payment and we would not be impressed with any notion of the insurance contract being an intervening factor. We strongly suspect, also, that the Minnesota court would find proximate causation here. We so conclude in view of Minnesota's liberal approach to its Act and in view of its specific holding in Benes that a remote vendor is liable under the Act. That holding implies a broad approach to causation. Compare Waynick v. Chicago's Last Department Store, 7 Cir., 269 F.2d 322, 326, certiorari denied Saxner v. Waynick, 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554; Rappaport v. Nichols, 31 N.J. 188, 156 A.2d 1, 8–9; Anderson v. Settergren, 100 Minn. 294, 111 N.W. 279.

■■■ We are aware, finally, of no substantial policy argument against the result reached by the District Court. Had the Olsons and Bly chosen initially to proceed solely against the defendant, the Village would have been directly responsible to them for all their damages. We recognize that when the Minnesota Civil Damage Act was enacted in 1911, the possibility of a liability insurer qualifying as a plaintiff within the statute's terms may not have occurred to the Minnesota Legislature. But it may be said with even greater assurance that in 1911 the Legislature did not contemplate the possibility that the Village of Brooten or any other municipality in Minnesota would be in the saloon business, or that insurance would be a routine business fact, or that automobiles would fill our

highways. Yet the responsiveness of a Minnesota municipality to liability under the Act, Hahn, and, specifically, to liability in automobile cases, Strand, Ritter, has been upheld without great difficulty by the Minnesota court. The statute was intended to provide remedies unknown to the common law for certain losses attributable to illegal acts in connection with the dispensation of intoxicating liquor and the Legislature was content, as a matter of its measure of social justice, to place upon those who benefit by that trade the burden occasioned by these illegalities. The change in our economic ways, represented by the automobile, the emergence of municipal liquor stores, and the expansion and acceptance of insurance protection are all only parts of a changing scene. As has been indicated so forcefully by the Illinois court, in Dworak in 161 N.E.2d 258, supra, with respect to the shifting of the economic burden, these changes do not make the statute, as a matter of policy, any less effective in its reach toward its intended purposes.

What we have said makes it unnecessary to comment upon the defendant's complaint as to the trial court's failure to make findings on certain issues.

In summary, we conclude here, as we did in another recent Minnesota case, Weiby v. Farmers Mutual Automobile Insurance Co., 8 Cir., 273 F.2d 327, 331:

> "Conceivably, the Supreme Court of Minnesota in an identical case might sustain (the defendant's) contentions. We cannot say, however, that it is so improbable that that court would sustain a determination by a trial judge in a case such as this * * * as to justify us in reversing the judgment appealed from. * * *

> "We are not convinced that in the instant case the trial court either misconceived or misapplied the applicable local law or that its findings of fact were 'clearly erroneous.' We think its determination was at least a permissible one."

Affirmed.